WOODRUFF, adm'r, &c. *vs.* COOK.

25  505
74h 558
25b  505
81 AD²413

Where, in an action to recover the possession of personal property, the complaint alleges that the property is of the value of "about $130," which allegation is not controverted by the answer, it is not erroneous to permit the defendant to show its true value.

The declarations of a former owner of property, made subsequent to an alleged gift or transfer thereof by him, are not admissible evidence in an action by his administrator against the person claiming to hold such property under and by virtue of such gift or transfer.

If, in such an action, the defendant, in his answer, denies that the plaintiff's intestate, at the time of his death, owned or was in possession of the property, he may, on the trial, claim and establish a title to the property by gift from the intestate; especially after the plaintiff has himself proved that the defendant had claimed the property as a gift from the intestate.

The defendant is not estopped by the defense set up in the answer, that he purchased the property from the plaintiff's intestate, from availing himself at the trial of another defense, which the plaintiff's evidence tends to establish, for the reason that such other defense was a bar to the action, under a denial in the answer.

As a general rule it is not necessary for a defendant in an action brought to recover the possession of personal property, to claim special damages, in his answer, to entitle him to recover them, for the taking and detention of his property from him, by the plaintiff.

A gift, *inter vivos*, of property capable of actual delivery, does not pass the title, without a delivery.

THIS action was brought by the plaintiff, as administrator with the will annexed of John Woodruff, deceased, to recover the possession of a gray mare, which the defendant had in his possession at the time the action was commenced. It was alleged in the complaint "that the deceased, previous to and at the time of his death, owned and was in possession of" the gray mare in question, and that the deceased raised her. That the plaintiff as administrator with the will annexed of the deceased became the owner and entitled to the possession of the goods and chattels of the deceased; and that as such administrator he, on the 7th day of August, 1856, demanded of the defendant the possession of the mare, she then being in his possession, but that the defendant refused to deliver the mare to the plaintiff; and that the defendant wrongfully detained the mare from the plaintiff; and that the mare was of the value of *about* one hun-

Woodruff v. Cook.

dred and thirty dollars. The complaint contained the appropriate demand for judgment.

The answer first stated that the defendant denied that John Woodruff, at the time of his death, owned, or that he was in possession of, the gray mare. The answer also contained the following denials of the defendant, viz: And he denies that the plaintiff, as such administrator, became the owner or entitled to the possession of the goods and chattels of the deceased. And the defendant denies that he wrongfully detains, or that he has wrongfully detained, the gray mare from the plaintiff. The defendant alleged in the answer, that the gray mare, at the time of the commencement of this action and for a long time prior thereto, was the property of the defendant; that the defendant purchased the mare of John Woodruff, deceased, in the month of November, 1854, and then and there paid him for the mare in money, the sum of $61, that being the purchase price of the mare then and there agreed upon between the defendant and the deceased. There was no denial in the answer of the allegation in the complaint touching the value of the mare; nor was there any claim in the answer as to her value; neither did the answer contain any claim of title to the mare by gift from the deceased. But the answer contained a demand for judgment against the plaintiff for the return of the mare or the value thereof, together with damages and costs. The pleadings were verified.

The action was tried at the Otsego circuit in December, 1856. The plaintiff proved that he was administrator with the will annexed of John Woodruff, deceased. That Woodruff died in February, 1856, on a farm in Middlefield, on which he had lived a number of years. That the defendant was a son-in-law of the deceased, and had lived in the house with the deceased for a year prior to his death, and was so living with him when he died, and continued afterwards to live in the same house. That the deceased raised the gray mare from a colt, and that she remained on the farm till he died. The plaintiff then rested his case. The defendant then proved that he used and took care of the mare after he went to live with the deceased, until he died; and that the deceased had stated to several witnesses, in 1855, that

Woodruff *v.* Cook.

the defendant owned the mare; that she belonged to the defendant; that he (deceased) had no interest in her; and one of the defendant's witnesses testified that the deceased told him, in December, 1855, or January, 1856, that he had sold the gray mare to the defendant. The defendant's counsel put this question to one of his witnesses: " What was the gray mare worth ?" To which the plaintiff's counsel objected, on the ground that her value was not put in issue by the pleadings. The judge overruled the objection and the counsel for the defendant excepted, and the witness testified that the mare was worth $150. The defendant proved by another witness, subject to a similar objection, that the mare was worth $150. The mare was taken from the defendant's possession by the sheriff, in virtue of papers issued in this action, and delivered to the plaintiff on the 7th or 8th of August, 1856. The defendant proved that by the taking of the mare away from him he was left without a team, and that she was taken from him before he had got in all his hay and grain; that he lived in a farming district, and it was very difficult to hire a horse. The defendant's counsel then asked a witness, what the use of the mare was worth from the time she was taken from the defendant. This was objected to by the plaintiff's counsel, on the ground that it was not the proper measure of damages; also because it was immaterial and irrelevant, and because no special damage was set up in the pleadings. The judge overruled the objection, and the plaintiff's counsel excepted. The witness answered, that the mare's use from the 8th of August to the time of the trial, was worth from $40 to $45. The plaintiff, in reply to the defendant's evidence, proved by George C. Clark that the defendant told him, in March, 1855, he wished the deceased would get a mate to the mare and then they would have a good team. That in June, 1855, the defendant said he had bought the mare of the deceased and had given him $100 for her, or had agreed to pay $100 for her, and that in September of the same year the defendant said the deceased had made him a present of the mare, or had given the mare to him. The plaintiff also proved by other witnesses, that in July or August, 1855, the defendant said that the deceased had given

Woodruff *v.* Cook.

the mare to his wife, but that he wanted her kept on the farm. That in the summer of 1855 the defendant said the mare was given to him by his father-in-law. That in October, 1855, while the mare was standing in the stable beside another horse, the defendant said if the horses were his he would not feed them any oats. That in September, 1855, the defendant said if the mare was his he would get a mate to her. That in March, 1856, the defendant said the mare was given to him, and he was requested to keep her on the farm. That in the summer of 1856 the defendant said the mare was his, but that he did not wish to sell her, as she was raised on the farm by his father-in-law, who had given her to his wife.

The plaintiff's counsel offered to show that in the fall of 1855 the deceased applied to a witness to hire him to break the mare for him. He again offered to show that the deceased, in the fall of 1855, contracted to sell the mare to a witness. He again offered to show that after August, 1855, a witness applied to the deceased to buy the mare of him, and that he then said he did not wish to sell her, as he intended to get a mate to her and keep her on the farm. He also offered to prove other declarations of the deceased. The offers above mentioned were severally objected to by the defendant's counsel on the ground that the defendant was not present, and were severally rejected by the judge, and his rulings were severally excepted to by the plaintiff's counsel.

It was proved that the defendant married a daughter of the deceased before or soon after he went to live with him. The plaintiff's counsel offered to show by a witness that the defendant said, two or three days previous to his marriage, that the mare belonged to the deceased. The judge rejected the evidence as immaterial, and the plaintiff's counsel excepted. The plaintiff's counsel called the attention of the judge to the answer, by which the defendant claimed title to the mare in question by purchase from the deceased in November, 1854, for the price paid of $61; and the judge ruled that the allegation as to the time of acquiring such title was not material for any purpose: to which the plaintiff's counsel excepted. The judge also ruled, near the

Woodruff *v.* Cook.

close of the evidence which the plaintiff gave in reply to the defendant's evidence, that the defendant might claim and establish title to the mare by gift from the deceased, under the answer; to which the plaintiff's counsel excepted. After the evidence was closed, the plaintiff's counsel asked the judge to direct the jury to render a verdict in favor of the plaintiff, finding the title to the mare to be in the plaintiff; which the judge refused to do, and the plaintiff's counsel excepted. The plaintiff's counsel also asked the court to charge the jury, that the defendant having by his answer claimed title to the mare by purchase for a coasideration paid by him, could not then claim it as a gift from the deceased; but the judge refused so to charge, to which refusal the plaintiff's counsel excepted. The plaintiff's counsel also requested the judge to charge the jury, that there was no evidence of an executed or valid gift of the mare by the deceased; the judge refused so to charge, and the plaintiff's counsel excepted.

The judge charged the jury, that when the plaintiff rested he had established his title, and a right to the possession of the mare, as the administrator of the deceased, and had made out a perfect right of action therefor against the defendant; and that the only question for the jury to determine was whether the defense had been sustained by the evidence, or in other words whether a transfer of the title to the mare by the deceased to the defendant had been established by the evidence. The judge also charged the jury, that if they were satisfied by the evidence that the mare was given or sold to the defendant by the deceased, and there was a delivery thereof to the defendant, then the defendant had established his title to the mare and was entitled to their verdict; to which the plaintiff's counsel excepted. The judge also charged the jury, that to constitute a valid gift, a delivery of the property was essential, but that there need not be an actual delivery; that it would be sufficient if the owner had given over the dominion and control of the property to the donee, although as in this case, it had been kept on the farm of the donor and used by the defendant upon his farm and in his employ from that time, provided the deceased had given over

*the entire dominion and control* of the mare to the defendant; to which the plaintiff's counsel excepted. The judge also charged the jury, that such a delivery as would be required as against a creditor or subsequent purchaser in good faith was not necessary in this case to establish a valid gift between the parties to it, but that it would be sufficient if *the deceased did actually part with the dominion and control of the mare, and yield up the dominion* and control thereof to the defendant; to which the plaintiff's counsel excepted.

It did not appear from the bill of exceptions that the judge was requested to charge, or that he did charge, the jury at all on the question of the value of the mare, or as to the defendant's damages for her detention by the plaintiff. The jury, after deliberating, rendered their verdict, whereby they found the title to the mare to be in the defendant; and they assessed the value thereof at $150, and the defendant's damages for taking and detaining the same at $10.

Judgment was entered in favor of the defendant on the verdict, and the plaintiff appealed therefrom to the general term.

*James E. Dewey*, for the plaintiff.

*D. C. Bates*, for the defendant.

*By the Court*, BALCOM, J. The allegation in the complaint, respecting the value of the mare, not controverted by the answer, is that the mare was "of the value of *about* one hundred and thirty dollars:" Hence the judge committed no error in permitting the defendant to show her true value. Perhaps the plaintiff might have required the judge to instruct the jury that they could not, under the pleadings, assess the value of the mare at a sum exceeding $130, but that question is not in the case.

The judge did not err in rejecting the plaintiff's offer to prove that John Woodruff, deceased, applied to a witness to hire him to break the mare for himself, and that he contracted to sell her after the time when the defendant claimed the deceased gave or sold her to him. (*Phœnix* v. *Dey*, 5 *John.* 412. *Sprague* v. *Kneeland*, 12 *Wend.* 161. *Brown* v.

*Mailler*, 2 *Kernan*, 118.) That the mare was kept, at the time of the alleged gift or sale, and afterwards, upon the farm of Woodruff, where the defendant labored for him and lived, or that a case of doubt was made by the evidence, whether Woodruff had ever given or sold the mare to the defendant, did not render the evidence offered competent for the plaintiff. The decisions cited in 1 *Cowen & Hill's Notes, pp.* 600, 661, 662, which seem to hold that the declarations of the alleged donor are evidence against the donee where there is doubt as to whether a gift has been established, conflict with principles well established in this state, and should not be followed.

The judge correctly held that the defendant might claim and establish a title to the mare by gift from John Woodruff, deceased, under the answer. He did not so decide until after the plaintiff had proved, by several witnesses, that the defendant had said Woodruff gave the mare to him. One issue in the action was whether Woodruff owned the mare at the time of his death. The plaintiff's evidence, that the defendant had said Woodruff gave the mare to him, tended to establish that Woodruff did not own her when he died. The plaintiff, in attempting to disprove the defense that the defendant purchased the mare of the deceased, was so unfortunate as to give evidence that tended to establish another defense which, if sustained was fatal to the action under the denial in the answer, that Woodruff, at the time of his death, owned or was in possession of the mare. The defendant was not estopped, by the defense set up in the answer, that he purchased the mare of Woodruff, from availing himself of another defense, at the trial, which the plaintiff's evidence tended to establish, for the reason that such other defense was a bar to the action under a denial in the answer. What has been said on this point also shows that the judge committed no error in his charge to the jury upon this branch of the case.

It was unnecessary for the defendant to set up in his answer facts which would entitle him to special damages for the taking and detention of the mare from him by the plaintiff, to enable him to recover such damages. It is not probable that the defendant knew, at the time he interposed his answer, precisely

what damages he would sustain before the trial by being deprived of the use of the mare.

As a general rule it is not necessary for a defendant, in an action to recover the possession of personal property, to claim special damages, in his answer, to entitle him to recover them, for the taking and detention of his property from him by the plaintiff. The facts which entitle the defendant to special damages do not always exist at the time of answering. They may afterwards arise before the trial, as may be seen by the authorities hereinafter cited. It was therefore proper for the defendant to prove, under his answer, what the use of the mare was worth from the time she was taken from him by the plaintiff, inasmuch as the plaintiff had detained her. But whether the defendant's evidence was sufficient to entitle him to recover for the use of the mare as damages, or whether he could only recover the interest on her value from the time the plaintiff took her, as damages, are questions which need not be now determined, because there is nothing in the bill of exceptions to show but that the judge correctly stated the rule of damages to the jury, as it is established by the adjudications upon the question. (*See Rowley* v. *Gibbs,* 14 *John.* 385 ; *Brizsee* v. *Maybee,* 21 *Wend.* 144; *Suydam* v. *Jenkins,* 3 *Sand.* 614.)

The charge of the judge as to what acts constitute a valid gift of a chattel, may have misled the jury. Among his remarks is one " that there need not be an actual delivery." It is true he subsequently qualified it somewhat, but it was nevertheless unlawful leaven in the charge. The mare was capable of actual delivery by Woodruff to the defendant; and there was no pretense of any symbolical delivery of her, or that she was delivered to another person for him. She was on the farm where both parties resided at the time of the alleged gift. And in such a case Kent says, " without an *actual delivery* the title does not pass." (2 *Kent's Com.* 438.) And all the authorities so hold. (*See Noble* v. *Smith,* 2 *John.* 52 ; *Grangiac* v. *Arden,* 10 *id.* 293 ; *Cook* v. *Husted,* 12 *id.* 188 ; 14 *Barb.* 243 ; 19 *id.* 631.)

The judge also erred in rejecting the offer of the plaintiff to show that the defendant, within two or three days previous to

his marriage, stated that the mare belonged to Woodruff. His marriage occurred in the fore part of the year 1855; and he alleged in his answer, on oath, that he purchased the mare of Woodruff in November, 1854. If he stated in January or February, 1855, that Woodruff then owned the mare, it was a circumstance for the jury to consider in determining the case. The plaintiff was entitled to prove the alleged statement, and his offer should have been received.

The judgment in the action must be reversed and a new trial granted; costs to abide the event.

Decision accordingly.

[TOMPKINS GENERAL TERM, October 20, 1857. *Gray, Mason* and *Balcom,* Justices.]