Tucker et al. *v.* Bradley et al.

MARIA D. TUCKER, BY HER NEXT FRIEND, FANNY F. DEMING *v.* JOHN BRADLEY, WILLIAM L. STRONG, *Guardian of* TIMOTHY FOLLETT, GEORGE F. EDMUNDS, *Administrator of the Estate of* DAVID LEE, *deceased,* NATHANIEL TUCKER AND OTHERS.

[IN CHANCERY.]

*Delivery.    Promissory note.    Deed.    Trust.    Evidence.    Husband and wife.    Separate property of married women.    Notice.*

If a member of a firm, who is trustee of the property of a third person, having the sole control thereof, lend the trust funds to his firm, and take their note and mortgage therefor, running to the *cestui que trust,* the delivery of the note and mortgage by the firm to the trustee will be a sufficient delivery to give them effect in law.

Where entries, made in the usual course of business upon the books of a mercantile firm, would be evidence, and the books are proved to be lost, the entries may be proved by secondary or parol testimony.

The oratrix made an ante-nuptial agreement with her future husband and F., by which the latter was made trustee of her property to have the management thereof for her separate use and benefit, and all claim or right of control or disposition of the same was withheld from the husband. After her marriage, F., as such trustee, loaned money belonging to the oratrix to the firm of F. & B., of which he was a member, and took their note and mortgage therefor, payable in five installments to the oratrix for her sole and separate use. F. retained this note and mortgage in his possession, the latter having been recorded, and the oratrix was ignorant of the whole transaction. From time to time, as the installments fell due upon the note, the firm of F. & B. paid them all to the husband of the oratrix. For the two first installments the husband endorsed receipts upon the note, signing in behalf of his wife. From the date of the note till after the payment of the last installment the oratrix did not know of the existence of the note or the fact of the loan, and she never authorized her husband to collect any of her funds except as a mere messenger to deliver them over to her; and it did not appear that F. & B., in paying the installments to him, supposed that he was receiving them merely in that capacity. A portion of the two last installments were paid by F. & B. in an account in their favor against the husband, which accrued for supplies used in the family of the oratrix, for the maintenance of which it appeared by the ante-nuptial agreement, she was to provide out of her own property; *Held,* that the knowledge of F. as to the husband's disability to control his wife's property, was notice to the firm of F. & B., and that such payments to the husband, with the exception of the account for family supplies, were not to be treated as payments upon the note, as against the oratrix.

BILL OF FORECLOSURE. The facts in the case are stated with sufficient particularity in the opinion of the court.

The chancellor, BARRETT, at the September Term, 1859, in Chittenden county, rendered a decree that the note and mortgage in question were valid and entitled to be enforced by the oratrix, deducting therefrom the two endorsements thereon, which the chancellor held should be treated as payments by Follett and Bradley to Timothy Follett, in his character as trustee for the oratrix, and were, therefore, binding upon the oratrix as payments.

From this decree the defendant, Edmunds, appealed.

*Geo. F. Edmunds, pro se.*

*Asahel Peck* and *Levi Underwood,* for the oratrix.

POLAND, J. This bill is brought to foreclose a mortgage executed by Timothy Follett and John Bradley to the oratrix. The defendant, Edmunds, as administrator of Lee, represents a mortgage executed by Follett and Bradley to Lee, Dater and Miller subsequent to the mortgage to the oratrix, and he is the only party who makes defence to the bill. The defence is placed upon two grounds.

1st. That the mortgage to the oratrix, and the note described in the condition, never became operative and binding for want of a valid delivery.

2d. That the mortgage note has been fully paid.

The history of the note and mortgage is in substance this. Upon the settlement of the estate of Mr. Deming, (father of the oratrix,) in 1838, the oratrix appointed Timothy Follett her agent and trustee, to take the control and management of her portion of the estate, to keep the same at interest, and pay to the oratrix such part of the income as she might need for her support, and in case of her marriage to retain and manage the same for her sole and separate use. This appointment was in writing and under seal, and mutually executed by the oratrix and Follett, and under its provisions he took possession and the entire control and management of her estate. In 1842, in contemplation of the marriage of the oratrix with Mr. Tucker, articles of settlement were duly executed by the oratrix, her intended husband and

Follett as her trustee, by which it was agreed that her property was to be retained and managed by Follett for her sole use and benefit, and all claim or right of control or disposition was with-held from her husband. In 1843, after the marriage of the oratrix, Follett loaned to the firm of Follett & Bradley, (of which firm he was a member,) of the funds of the oratrix in his hands the amount of the note described in the mortgage, and said note was executed by the members of said firm severally, and was in terms made payable to the oratrix, or order, to her sole and separate use, and the mortgage deed which is now sought to be enforced was also executed by said firm to secure the payment of said note. Follett received said note and mortgage and caused said mortgage to be recorded.

The execution of said note and mortgage was wholly unknown to the oratrix at the time, and for several years after, when they were found among Follett's papers after he became insane, and were given to the oratrix by Follett's guardian.

There was never any delivery of the note and mortgage to the oratrix personally, and whether there was any legal delivery, must depend upon the legality of the delivery to Follett.

It is essential to the validity of deeds, and indeed of all written obligations, that there should be a sufficient delivery over of the instrument, and ordinarily so long as it remains in the hands and possession of the grantor or obligor, there can be no legal delivery to the grantee or obligee.

To this effect are most of the cases cited by the defendant. Was the delivery of the note and mortgage deed to Follett a legal delivery ? The defendant contends it was not, because Follett was one of the signers of the note, and also one of the grantors in the deed, and that therefore this case is brought within the principle of the cases cited.

By referring to the facts already stated, and especially to the written contract between the oratrix and Follett, and the marriage contract, it will be seen that Follett was to have the sole control of the funds and property of the oratrix ; that he alone had authority to loan her monies, and that he not only had authority to take the proper securities for the same, but it was his legal duty to hold the same for the benefit of the oratrix.

There can, therefore, be no objection to the validity of the delivery to him, on the score of his not having sufficient authority to act in that respect for the oratrix. The objection must rest solely upon the ground that Follett was one of the makers of the note and one of the grantors in the deed. Did this fact render him incompetent to act as the agent or trustee of the oratrix, to take the delivery of these instruments ? Upon consideration we are of opinion that it did not, and that in thus dealing with his firm with the money of the oratrix, he might also act in the capacity of agent for her. No authority has been cited to show that he might not do so under such circumstances, and we can see no reasonable ground upon which his right to do so can be denied. The case of *Woodford* v. *Dorwin*, 3 Vt. 82, cited by the defendant, impliedly sustains such a view.

We understand it now to be well settled that a partner may loan his own money to his firm, and take the note of the firm to himself, and the same be a valid obligation, and although he cannot maintain a suit in his name against the firm thereon, this is merely a technical difficulty caused by the rule that one cannot be both the plaintiff and the defendant in the same action, and when such note is properly transferred by the payee to a third person he may recover thereon against the firm ; 39 Maine 304, *Davis* v. *Briggs et al.* ; 11 Met. 398, *Thayer* v. *Buffum*.

These decisions establish the doctrine that there may be a valid delivery of a note by a firm to one of the partners, where he is himself the payee, and real party in interest in the note. With much more reason it seems to us he might act as the agent or trustee of another, when duly authorized, and where his duty to his principal required it.

Being thus of opinion that there was a sufficient legal delivery of this note and mortgage to give them effect as such, we have no occasion to examine whether they might not be sustained as valid securities in a court of equity, upon principles peculiar to that jurisdiction, even if a strict technical delivery was wanting.

2. Has this note been extinguished by payment?

The defendant does not claim that any payment was ever made upon the note directly to the oratrix, but that it was paid to Mr. Tucker, her husband.

The oratrix claims that the proof taken by the master is not legal and sufficient to prove the fact of payment to her husband, but if that is made out, she insists that such payment was wholly unauthorized, and was, therefore, no valid payment of the note that should bind her.

1. Was the note paid to Mr. Tucker?

The first and second installments of the note and interest are endorsed upon the note, and signed by Mr. Tucker, and no question is made but that those sums were paid to him. The master reports that if the evidence in relation to the entries upon the books of Follett & Bradley of the payments on this note was admissible, then he finds that the note was fully paid by Follett & Bradley to Tucker, but not otherwise. Was this evidence admissible? The master reports that from the evidence before him, he found that the books were lost. The evidence certainly tended to prove that, and upon such a question we should hold his conclusion binding, unless it appeared very clearly that he was wrong. But we see no occasion to doubt its propriety. The evidence is satisfactory to us that Follett & Bradley kept regular books; that the books examined by Mr. Noyes and others were their books, and that the entries copied and given in evidence were correctly copied and had reference to the note in question.

These entries indicate clearly that the third, fourth and fifth installments on the note were also paid by Follett & Bradley to Tucker. They are of a kind and character usually kept by mercantile men, so as to make them entries in the regular course of business. Hence, as we understand the rules of evidence, these entries would be admissible without question, if the books could be produced. The counsel of the oratrix claim that where entries of this character are admissible, they can only be shown by the production of the original entries themselves upon the book, and that if the book be lost the evidence is gone, however clearly the party may be able to show what the entries were.

No case, however, is cited to sustain this position, and we know of none that does so. It is said in many of the cases that such entries must be shown by the production of the book; but this is equally true of all written evidence, that the writing or

instrument must be produced, and its contents cannot be shown by witnesses, except by first proving the loss of the writing.

It appears to us that the same rule must be applied to entries in a book; that the book must be produced or its loss proved, and then the entries may be proved by parol. Such evidence would usually be far less satisfactory than the production of the book itself, especially where there was the slightest ground to doubt the correctness of the book itself, or the evidence of the entries themselves, but we think such evidence must be held admissible. In this case we are satisfied from the proof that the books were regularly kept, and that the entries shown by the copies from them are truly copied, and are as satisfactory to us as if the books themselves were produced.

2. Did these payments to Mr. Tucker extinguish the note; had he authority from the oratrix to receive payment, so as to bind her?

It is conceded that by the ante-nuptial contract all right to control and manage the property of the oratrix was expressly withheld from him, and the usual legal effect of a marriage, to enable the husband to collect and appropriate to his own use the choses in action of the wife, was thereby prevented.

There is no evidence of any express authority from the oratrix to her husband to receive payment upon this note, or that she ever assented to such payments, or that the payments on the note so far as they were made in money directly to Mr. Tucker, ever came to her hands, or in any manner inured to her benefit. These payments then can only bind the oratrix upon the ground that she had so far allowed her husband to act for her in the management of her affairs, and especially in the receipt of monies, that Follett & Bradley had the right to believe that he had authority from her to receive payment upon this note.

Follett, from his position and relations with the oratrix, had full and express notice of Mr. Tucker's disability to act in the management of his wife's property, and from the connection of Bradley with him, and from the language of the note and mortgage signed by him, that they were given to *the sole and separate use* of the oratrix, we are of opinion that Bradley must also be regarded as having the same knowledge. If this were not so

we do not see why the ordinary rule, that notice to one partner in a partnesrhip transaction is notice to the firm, would not apply here.

The only evidence in relation to how far the oratrix had allowed her husband to act for her, is that of the oratrix herself. She says that the income on her stock in Troy was sometimes paid by Judge Follett to her husband, but that she received it, and that sometimes he collected for her the rent upon a house that she owned. The master has found from the evidence before him that Mr. Tucker was not so far made her agent, or so held out by her as such, as to make these payments bind her, and we are satisfied with the correctness of his finding. All that he appears ever to have done or been allowed to do, was to act as a messenger or carrier of monies belonging to the oratrix for her.

There is no evidence in the case that these payments made to him by Follett & Bradley were made with any such expectation on their part, or any such profession on his. Much the largest portion of the payments were made by drawing notes in his favor payable at the Bank of Burlington, and which he procured to be discounted there. The evidence of Mr. Bradley tends to the conclusion that Mr. Tucker did not receive or profess to receive these payments to carry to the oratrix, but that he wanted the money for his own use. Mr. Bradley says " the purpose for which the notes were given was to anticipate the installments, and we gave him notes to apply in payment of the note, *he wanting money.*" These facts, taken in connection with the entire ignorance of the oratrix that any such note existed, or that any such sums were falling due to her, which must have been known to Follett, at least are sufficient in our judgment to show that Follett & Bradley could not have reasonably supposed that Mr. Tucker was authorized by the oratrix to receive this money.

If these payments can be sustained against the oratrix, we do not see why, upon the same ground, Follett might not have paid over safely the whole of the property of the oratrix in his hands to her husband. The first and second installments endorsed upon the note, are endorsed upon the note in the hand writing of Judge Follett, and signed by the husband of the oratrix as follows : " Maria Deming Tucker by Nathaniel A. Tucker." These payments were

allowed by the chancellor, upon the ground that it was to be taken that Follett & Bradley made these payments to Follett as trustee, and Follett as trustee made the payment to Tucker, and that if the payment to Tucker was unauthorized, still Follett & Bradley had discharged so much of their mortgage debt. But we think the facts do not establish such a conclusion. The receipts on the notes are not to Follett as trustee, or to Follett alone, but are simply endorsements of the amount paid without specifying who made the payments, and their legal effect and the inference from them is that the payments were made by the makers of the note, and the receipts are to them.

By reference to Follett & Bradley's entries of payments upon this note, it will be seen that the first installment was paid by Follett & Bradley giving their note to Mr. Tucker, payable at the bank on which he drew the money. Mr. Bradley says in his testimony, " my impression is that we made the payments endorsed on said note to Capt. Tucker." Upon these facts it seems to us that there is no room to doubt that these payments were made directly by Follett & Bradley to Mr. Tucker, and must stand upon the same footing with the payments made subsequently and not endorsed.

By the entries of these payments upon the books of Follett & Bradley, it appears that the third and fourth installments on said note were in part paid by an application upon the books of Follett & Bradley, to settle an account against Mr. Tucker of fourteen hundred and eighty dollars and forty-two cents principal, and forty-eight dollars and forty cents interest. The defendant claims that this at least was a payment to the oratrix, or for her benefit, as the account was for supplies furnished and used in the family of the oratrix.

From the terms of the marriage contract, and the testimony of the oratrix, we think there can be no doubt but that she expected and intended that the maintenance and support of the family should be wholly provided from her property. She had a very considerable fortune, and there is no evidence that he had any. So far as the evidence shows anything on the subject, it is that all the family expenses were paid from her estate.

It appears also from the oratrix testimony that along near the

period of these payments and the accruing of this account, their family supplies were to a considerable extent obtained at Follett & Bradley's store.

From these facts we are satisfied that some portion, and probably the larger portion of this account, accrued for such supplies, and that such portion should, by the understanding of all parties, be borne by the oratrix, out of her property. In ordinary circumstances we should direct a reference to ascertain how much of this account accrued for such a purpose, but after so great a lapse of time, and especially after the loss of the books of Follett & Bradley, this would seem to be wholly impracticable and useless.

It is very probable that some of the monies paid on this note directly to Mr. Tucker were expended for the benefit of the oratrix or her family, but as the burden of proof would be upon the defendants to show this, and we can see no possible mode by which it could now be ascertained if a reference was directed for that purpose, we do not deem it advisable. Under the peculiar condition of the case, therefore, we feel quite justified in assuming a somewhat arbitrary rule, but one that we feel will nearly reach the true equity of the case, and at any rate save a long and expensive, and probably wholly fruitless accounting.

The decree of the chancellor is reversed, and the case remanded to the court of chancery, with directions to enter a decree for the oratrix for the full amount of the said mortgage note, and interest thereon, deducting the amount of the said account of Follett & Bradley against N. A. Tucker.