HUGH LOWERY et al., as Executors, etc., Appellants, *v.* SARAH ERSKINE, Respondent.

Where, upon appeal in an action tried by the court, the General Term reverses the judgment and it appears by its order that the reversal was upon questions, both of law and fact, it will be deemed to have based its decision upon errors of fact, if that be necessary to sustain such decision.

*It seems* that to justify a reversal upon the facts by the General Term, it must appear that the findings were against the weight of evidence, or that the proofs so clearly preponderated in favor of a contrary result that it can be said with a reasonable degree of certainty that the trial court erred in its conclusions.

Where securities for loans are taken by one person in the name of another, the presumption is that they are the property of the latter, and the possession of the securities by the former, where it appears that he was the agent of the latter, will be deemed to be that of his principal.

J., plaintiff's testator, loaned certain moneys to various parties, taking bonds and mortgages and a promissory note, all payable to defendant, all of which were in J.'s possession at the time of his death. In an action to recover possession of said securities, which plaintiffs alleged to have been the property of the testator, and to have been unlawfully taken by defendant from them, it appeared that J. had moneys in his hands belonging to defendant, who was his niece; that he stated to the borrowers and to others that the moneys loaned belonged to defendant; that at his request defendant had executed to him a power of attorney, among other things, "to govern and control all bonds and mortgages, to sell and transfer the same, * * * to take charge of all personal property * * * that he may now have in his possession." The only explanation on the part of plaintiffs was a declaration contained in a paper alleged to have been delivered by the testator to one of the plaintiffs

prior to his death, wherein he expressed his wishes with reference to the disposition of these securities after his death, and stated that he had taken the mortgages in the name of his niece to avoid being taxed for the same. *Held,* that such declaration was incompetent to defeat the defendant's title; and that a finding of the trial court that plaintiffs were entitled to the securities was not justified by the evidence and was properly reversed by the General Term.

(Argued January 18, 1889; decided March 12, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 9, 1887, which reversed in part upon questions of fact, as well as law, and affirmed in part a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*M. H. Hirschberg* for appellants. There was no executed gift of the securities to the defendant during her uncle's life-time, and no trust created with respect to them. (*Hunter* v. *Hunter,* 19 Barb. 631; *Fulton* v. *Fulton,* 48 id. 581; *Maynard* v. *Maynard,* 10 Mass. 456; *Stilwell* v. *Hubbard,* 20 Wend. 44; *Bedell* v. *Carll,* 33 N. Y. 581; *Fisher* v. *Hall,* 41 id. 416; *Curry* v. *Powers,* 70 id. 212; *Young* v. *Young,* 80 id. 422; *Jackson* v. *Twenty-third St. R. R. Co.,* 88 id. 520; *Stokes* v. *Pease,* 19 Week. Dig. 310; *Matter of O'Gara,* 15 N. Y. S. R. 737; *Shurtleleff* v. *Francis,* 118 Mass. 154; *Basket* v. *Hassell,* 107 U. S. 602; *Pope* v. *Savings Bk.* 56 Vt. 284; *Taylor* v. *Henry,* 48 Me. 550; *Jackson* v. *Phipps,* 12 Johns. 418; *Jackson* v. *Bodle,* 20 id. 184; *Elsey* v. *Metcalf,* 1 Den. 323; *Church* v. *Gilman,* 15 Wend. 656; *Wilsey* v. *Dennis,* 44 Barb. 354; *Day* v. *Mooney,* 6 T. & C. 382; *Best* v. *Brown,* 25 Hun, 223; *Knolls* v. *Barnhart,* 71 N. Y. 474; *Gifford* v. *Corrigan,* 105 id. 223; *Shuttleworth* v. *Winter,* 55 id. 625.) The testator did not manifest an intention to give the securities to defendant. (*Doty* v. *Wilson,* 47 N. Y. 580.) The instrument executed by the testator August 22, 1885, is void as a testamentary disposition. (*In re Diez,* 50 N. Y. 93;

5 Dem. 179.) The statute against resulting trusts has no application. ( *Van Rensselaer* v. *Sheriff*, 1 Cow. 501–509 ; *Robbins* v. *Robbins*, 89 N. Y. 251.) The title to the securities has not been affected by the transaction between Mrs. Sears and the defendant since the testator's death. (Pollock on Prin. of Contracts, 161 ; *Crosby* v. *Wood*, 6 N. Y. 369.)

*E. A. Brewster* for respondent. The testator made a valid gift to the defendant of whatever money of his own was invested in the securities in question. ( *Martin* v. *Funk*, 75 N. Y. 134 ; *Willis* v. *Smyth*, 91 id. 297 ; *Francis* v. *N. Y. & B. R. Co.*, 108 id. 94 ; *Wilsey* v. *Dennis*, 44 Barb. 354 ; *Grangiac* v. *Arden*, 10 Johns. 293 ; *Sanford* v. *Sanford*, 45 N. Y. 725 ; 58 id. 69 ; *Jackson* v. *Feller*, 2 Wend. 465 ; *Renfrew* v. *McDonald*, 11 Hun, 254.)

RUGER, Ch. J. The appeal in this case requires us to examine and determine the questions of fact involved in the issues tried. The action was brought by the executors of John Erskine to recover from the defendant three several choses in action, alleged to have been the property of their testator, and to have been unlawfully taken by her, from the executors. The answer denied that such securities were the property of John Erskine, and alleged the title thereto to be in the defendant. The trial court, after a hearing, rendered judgment for the plaintiffs for two of the items specified, and for the defendant upon the remaining claim. The defendant appealed to the General Term upon exceptions to the findings, from the whole and every part of such judgment; and the plaintiffs from that part which favored the defendant. The General Term, upon questions both of law and fact, reversed so much of the judgment as was in favor of the plaintiffs and ordered a new trial thereof, and affirmed so much as favored the defendant. From this judgment the plaintiffs appealed to this court upon a stipulation for judgment absolute in case of affirmance.

The General Term having authority to hear appeals, both

upon the law and the facts, must be deemed to have determined them upon errors of fact, if that be necessary to sustain their judgment. (Code of Civ. Pro. § 1338, subd. 1, § 1346; *Verplanck* v. *Member*, 74 N. Y. 620.)

The most important issue of fact made by the pleadings and tried by the court was, whether the moneys, for which the securities in dispute were given — belonged to the testator or to the defendant. The trial court found that they were the property of the testator, but ordered judgment for the defendant for one of the securities in dispute, upon the ground that a valid transfer thereof had been made to her, by the executors after the testator's death. The finding that the moneys loaned were the property of John Erskine was excepted to by the defendant, and it must now be deemed to have been reversed by the General Term upon her appeal.

The important question before us is, therefore, whether this reversal was authorized by the evidence. If it was, the same consideration controls the disposition of the order of affirmance, since the evidence upon the disputed question of fact applies with equal force to each of the securities in question.

The rule governing appellate tribunals in reviewing questions of fact is stated in *Baird* v. *Mayor, etc.* (96 N. Y. 577), to be "to justify a reversal it must appear that such findings were against the weight of evidence, or that the proofs so clearly preponderated in favor of a contrary result that it can be said with a reasonable degree of certainty that the trial court erred in its conclusions." (*Crane* v. *Baudouine*, 55 N. Y. 256; *Westerlo* v. *De Witt*, 36 id. 344.) Having this rule in view, we proceed to an examination of the evidence. The proof showed that the testator was a clergyman residing in a village in Orange county, N. Y., and in 1871 visited his brother, the defendant's father, in Ireland. Upon his return to this country he brought back the defendant, then a young girl of about sixteen years of age. Between that time and the death of her uncle, in 1885, she resided most of the time with her brother at St. Louis and

elsewhere, at a distance from the testator. After the death of her uncle she, upon request, visited Mrs. Sears, one of the executors, with whom and her mother the testator resided at the time of his death, and was then shown the securities in question, with some others, and also a paper purporting to be signed and sealed by the testator, containing a declaration of his wishes in regard to the disposition of the securities exhibited. The securities, here in dispute, consisted of, first, a bond and mortgage for $2,500, executed by Joseph Clineman to Sarah Erskine, dated March 1, 1882, and recorded May 17, 1882; second, a bond and mortgage executed by Ann E. Constable and others to Sarah Erskine, dated December 28, 1883, and recorded February 5, 1884; third, a promissory note made by one Jameson, dated February 1, 1884, payable to Sarah Erskine for $100. The plaintiff Sears testifies that the declaration of testator's intentions, together with the Schoonmaker mortgages, referred to in such declaration, were given to her August 22, 1885, and that she retained them in her possession until testator's death, September 26, 1885; that the other securities were placed in a safe of which she had the key, and remained there until after the testator's death, when she took them into her possession. There was an inside safe where the testator kept his private papers and of which he kept the key. It also appeared that each of these securities was given at the time they respectively bear date, in consideration of loans of money negotiated by the testator, and that such moneys were paid to the respective borrowers by him. It also appeared that Erskine stated to Clineman and Jameson, two of the borrowers, at the time of their respective loans, that the money loaned belonged to or was the money of his niece, the defendant, and to another witness " that he had taken a mortgage of $1,000 on Mrs. Constable's farm and had the papers made out in Sarah Erskine's name.   *   *   *   I have given it to her and I expect to do more for her than that." It also appeared that the defendant's father, at the time she left Ireland, delivered to the testator a sum of money, which he described to be the defendant's portion of his property.

The defendant was never informed of the amount by either her father or uncle, and it did not appear affirmatively in the case what the amount was.

The testator never rendered any statement to the defendant of his transactions in her name, and she was ignorant of their extent, or even of their existence, until after his death. Two witnesses testified to declarations made to them by the testator about the time he returned from Ireland, and at other times, that defendant's father had given him money in trust for Sarah. Two of the plaintiffs testified to declarations made to them by their testator, one upon an application by him to borrow money, that "he had some money he was putting out of Sarah Erskine, his niece;" and the other, that he told him "the amount of the mortgages belonging to Miss Erskine," and that "the mortgages that were in Miss Erskine's name he meant them for her;" that he didn't want them taken off of record. To another person, a brother clergyman, he said, a year or so before his death, "that he had made provision for his niece in St. Louis; he had given her, or had a bond and mortgage in her name to the amount of — I am not positive, but I think $3,000. That he had put it in this way in order that, at his death, it might be hers, so she could receive it without going through the hands of executors or the uncertainties of a will." To another witness, who borrowed of him $800, in 1882, he stated that the money loaned "was Sarah Erskine's money." It also appeared that none of these securities standing in the name of Sarah Erskine were appraised or inventoried by the executors, although they were then in their possession; and upon the trial each of the executors denied giving authority for the commencement of this action. In 1882, the testator wrote to the defendant at St. Louis several times, urging her to send him a power of attorney authorizing him to transact business in her name, which she then declined to give. In 1883, however, upon a visit to him in Orange county, she was persuaded to execute a power of attorney to the testator, appointing him "my true

and lawful attorney for me and in my name, place and stead, and to my use to exercise the general control and supervision over all my lands, tenements, that I now own, to grant, bargain and sell any of my real estate, to govern and control all bonds and mortgages, to sell the same and transfer the same as he may deem just and proper, to take charge of all personal property, bank account and other personal property that he may now have in his possession."

The inference to be drawn from the declarations referred to, that the moneys loaned by the testator in making these investments, either originally belonged to defendant or had become hers by some valid transfer, seems irresistible. (*Trow* v. *Shannon*, 78 N. Y. 448.) While some of them are consistent with a future intention to make gifts of some kind to his niece, none of them conflict with the express statements that the specific property which he described as being hers was so in fact at the time of his declaration.

In the consideration of this evidence we undoubtedly start with the presumption that the securities taken in her name were the property of the defendant. In the absence of any explanation or contradictory evidence, the legal title of choses in action must be deemed to be in the person to whom they are payable, and by whom alone they can be enforced. (*Sanford* v. *Sanford*, 45 N. Y. 723; *S. C.*, 58 id. 69; *Holliday* v. *Lewis*, 14 Hun, 478; *Central Bank of Brooklyn* v. *Hammett*, 50 N. Y. 159.) This presumption would be much strengthened where the securities are found in the possession of an agent of the payee, whose possession would, in such case, be deemed that of his principal. (*Rawley* v. *Brown*, 71 N. Y. 85.) This is doubtless a presumption which may be overcome by proof; but, in the absence of proof, it requires a finding that the defendant was entitled to the possession of the securities. The act of the testator in procuring a power of attorney to manage and control the defendant's property in his possession furnishes a strong presumption that he was then possessed of such property, and is manifestly inconsistent with the idea that he obtained it for the purpose of transacting his

own business for his own benefit. The evidence referred to would certainly authorize a finding that the money invested in the securities, taken in the name of the defendant, belonged to her (*Trow* v. *Shannon*, 78 N. Y. 448; *Hunter* v. *Hunter*, *supra;* *Holliday* v. *Lewis*, *supra;* *Tucker* v. *Bradley*, 33 Vt. 327); and, if necessary, that he held such securities in trust for her. (*Day* v. *Roth*, 18 N. Y. 448.)

We are of the opinion that the case made by the defendant was not sufficiently answered by the plaintiffs. The only explanation suggested for the oft-repeated and explicit declarations of the testator, that the money invested by him belonged to the defendant, was that they were untrue and were made, and the securities taken in defendant's name for the purpose of evading taxation. The lack of integrity which this explanation imputes to the testator might well cause his executors to deny connection with a prosecution which revealed it, and should have great weight in considering the evidence bearing on the question. The maxim, "*Allegans suam turpitudinem non est audiendus*," applies in this connection as well to personal representatives as to the testator himself. If considered at all, the proof to establish it should be at least competent, clear and explicit. We find no such proof in the case. No direct evidence was given by the plaintiffs as to the ownership by the testator of the moneys invested in these securities, except that arising from the presumption growing out of their possession. He being the agent of the defendant, that possession was equally consistent with their ownership by the defendant as with that of the testator. (*Rawley* v. *Brown*, 71 N. Y. 85.) It was said in that case: "If the custody and possession is shown to be equally consistent with an outstanding ownership in a third person as with a title in the one having possession, no presumption of ownership arises solely from such possession." It was, perhaps, impossible to produce direct evidence, after the death of the testator, of his title to the securities, but the plaintiffs might have shown by the evidence of testator's brother, which was obtainable, the amount of money which

he intrusted to the testator for the defendant in 1871. It was quite as incumbent upon them to produce this evidence as it was for the defendant to do so.

We think that the trial court placed undue weight upon the fact that defendant did not produce this evidence, and drew the inference from this, and other circumstances, that the amount of money received by the testator from defendant's father was inconsiderable. We think this inference was unwarrantable. The sum seemed sufficiently large to cause the testator to mention it to several persons immediately upon his return from Ireland, when he would seem to have had no motive to create false impressions as to the fact. He also referred to it at other times. We attach little weight to the declarations of the defendant in respect to these transactions. She was confessedly ignorant of their nature and extent, and statements made by her, in ignorance of the truth, cannot be regarded as evidence to disprove the evidence upon which her claims are now predicated. The entries in the testator's diary bearing upon the question of the ownership of the moneys invested by him, were incompetent. Such entries were admitted for the sole purpose of affording a standard for the comparison of handwriting, and were not competent for any other purpose.

The principal evidence, therefore, produced by the plaintiffs bearing upon this question, is the testator's declaration contained in the paper wherein he expressed his wishes with reference to the disposition of these securities after his death. In that he says, " I have taken three mortgages in my niece Sarah Erskine's name to avoid being taxed for same." This evidence was not objected to by defendant, and could not have been excluded if it had been, as it was competent, in view of its connection with the transaction through which the defendant obtained possession of the securities. This paper had no effect as a testamentary disposition of property, and was, therefore, a mere declaration in his own favor by the testator tending to invalidate title to the securities which he had previously taken for the defendant. It was clearly

incompetent as evidence to defeat the defendant's title. (*Tousley* v. *Barry*, 16 N. Y. 501; *Woodruff* v. *Cook*, 25 Barb. 505; *Brown* v. *Mailler*, 12 N. Y. 118.)

Other considerations bear upon the weight which could properly be given to this declaration. The body of the instrument was in the handwriting of the plaintiff Mary Ann Sears, who was the residuary legatee of the testator, and was made about a month previous to his death when he was too feeble to write it himself. The genuineness of the testator's signature was a contested fact in the case. The statement made therein was inconsistent with the uniform and repeated declarations of the testator during his lifetime to numerous persons of the most unimpeachable character. Other circumstances of minor importance have been referred to as bearing upon the issue, but none of sufficient weight to overcome the conclusions reached by the General Term upon the facts, and we are, therefore, of the opinion that the reversal of the findings of the trial court was justified upon the evidence. An able discussion of the questions relating to the sufficiency of the evidence to establish a valid gift *inter vivos*, or an enforceable trust as to the property in dispute was made by the appellants' counsel, but the contention in respect thereto was based upon the assumption that the moneys invested belonged to the testator. The finding of fact to that effect having been reversed, the argument founded upon it necessarily falls.

We have also thought it unnecessary to consider the effect which the recording of the mortgages by the testator, and his position as defendant's agent, had upon the question of a delivery of them to the defendant. (*Munoz* v. *Wilson*, 111 N. Y. 295.) He was undoubtedly an agent for the purpose of managing and controlling securities for her, and his possession of such securities might be deemed the possession of the principal in such a sense as to effect a valid delivery to her (*Central Bank* v. *Hammett*, *supra*; *Tucker* v. *Bradley*, *supra*; *Rawley* v. *Brown*, *supra*), but we do not now desire to pass upon this question.

The views expressed lead to an affirmance of the order of

the General Term and an order for judgment absolute in favor of the defendant, with costs to be paid from the estate.

All concur.

Order affirmed, and judgment accordingly.