## WILLIS v. WILLIS et al.

(Supreme Court, Appellate Division, Second Department. January 16, 1903.)

1. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—LOANS—INTENTION.

Though the law will not imply the relation of debtor and creditor between husband and wife from the mere transfer of her separate property to him, such relation may nevertheless be established, as against other creditors of the husband, by evidence that such was the intention of the parties at the time of the transfer.

2. SAME—EVIDENCE—SUFFICIENCY TO SHOW LOAN.

In an action to set aside as fraudulent a conveyance from a husband to his wife, the evidence examined, and *held* to sustain a finding of the special term that previous transfers of money from the wife to the husband constituted loans by her to him.

3. SAME—CONTINUANCE IN POSSESSION—EFFECT.

Continuance in possession by a grantor of real estate after conveyance to another, while a circumstance to be considered with the other evidence, does not of itself warrant the legal conclusion that the deed was fraudulent as to creditors.

4. SAME—EVIDENCE—SUFFICIENCY.

A husband deeded to a third party, who at once reconveyed to the wife. The deeds were not recorded until three years after their execution and a year before a decree in an action then pending was entered against the husband. The husband, at the time of the transfer, owed his wife more than the property was worth, and the wife testified that she did not know he owed other debts. The property consisted in a one-third interest in a farm, the remaining two-thirds of which were owned by an old lady, who was anxious the husband and wife should live on it. After the conveyance the husband remained on the farm while his wife lived in town several years, until she disposed of her property there, when she also came out to the farm. *Held,* that the deed was not fraudulent as to the husband's creditors.

Appeal from trial term, Westchester county.

Action by James Willis against John J. Willis and another. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

John B. Uhle, for appellant.

Frederic S. Barnum, for respondents.

JENKS, J. This action is by a judgment creditor to set aside a conveyance from husband to wife as fraudulent. On March 2, 1896, the husband conveyed his undivided one-third interest (worth $3,000) in a farm to Jennie P. Marsh, who immediately conveyed to the wife. In 1897 the plaintiff, a son of the said husband by a former marriage, began an action against his father in the circuit court of the United States for the district of New Jersey for an accounting of his mother's estate. In 1899 the said deeds were recorded. In 1900 a decree in the circuit court action was entered against the defendant, and an action was brought in this court to enforce the decree, which resulted in the judgment that is the basis of this action. These facts, supplemented by the testimony of the husband that he had no other property when he made the conveyance, constitute the plaintiff's case. The question

¶ 3. See Fraudulent Conveyances, vol. 24, Cent. Dig. § 407.

of fraudulent intent is one of fact.  Gen. Laws, c. 46, § 229.  Whether the moneys received by the husband were gifts or loans from the wife was a question of intention upon the proof.  Schouler, Husb. & Wife, § 395; Woodworth v. Sweet, 51 N. Y. 8.  These circumstances appear by the testimony of the wife:  She lived in a country town.  Her husband owed her more than $8,000.  She acquired property from her father's estate, consisting of government bonds, mortgages, improved realty, interests in a plantation and in a mine.  After her marriage she sold her realty, and caused the proceeds to be sent by check and by express to her husband at his place of business in the city of New York. She had a list of the receipts by her husband from 1880 to 1890, indicating the sources thereof.  She also had a list of the payments made to her by her husband from 1880 to 1894.  Her husband took the said moneys, and invested them in his own name.  She can tell from the check book the exact amount of her husband's indebtedness.  Her husband, if he could, was to pay back to her the money received by him.  When he acquired his one-third interest in the property, his wife called his attention to their affairs, and he promised to make a deed to her forthwith, but it was put off from time to time.  The learned counsel for the appellant insists that the testimony was insufficient to establish an indebtedness, though he does not question that the wife had a separate estate, or that the proceeds of the sale thereof were received by her husband.  It is said that no accounts were kept between them.  Though the wife testifies that no account books were kept, she also testifies that she had papers to show for the moneys her husband received,—express receipts and letters; that she obtained her items from bank book and check book; that she had brought a number of checks; that she would know the letters, and "go by the check book" in knowing the exact amount owed to her at any time; that it was "down in black and white in the check book."  She also testifies that all of the moneys paid back were upon the list produced, and that the balance struck between the list of her husband's receipts of her moneys and the list of his payments to her would represent the indebtedness.  It is said that the wife did not know what use the husband made of the money.  But this is not inconsistent with the relation of debtor and creditor, though it might be with that of principal and agent.  It is said that when she wanted money she asked for it, "as any wife would do."  The latter statement is an inference.  All that she testifies to is that when she wanted money she could get it.  Any creditor, unless the debt was secured by formal obligation, due at a fixed time, might well wish to establish the same relation with his debtor.  It is said that there was no loan; that the husband simply acted as her agent, never made any settlement, and was not expected to return the money used unless he could.  I have discussed the evidence as to whether the transaction was loan.  Here and there in the testimony of the wife statements are made to the acute cross-examiner, who was probing to establish agency, which might give color to the contention of agency; but when the testimony is read as a connected story these statements are either modified or explained away by the context, or are consistent with the theory of loans.  The fact that the husband never made any settlement with her does not establish agency

more than debt. The fact that the husband was not expected to return the money unless he could is more consistent with the relation of debtor and creditor than with that of principal and agent, for the agent is not expected to return the money if he could, but to keep it, so that it could be returned, or to invest it, in which case a return of the money was not to be expected. The learned special term found that the transactions were loans, and, as I cannot say that such finding is against the weight of evidence, or that the proof in the other scale so clearly preponderates as to indicate with reasonable certainty that the court erred, the finding must be affirmed. Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588; Burton Co. v. Cowan, 80 Hun, 392, 30 N. Y. Supp. 317, affirmed in 150 N. Y. 583, 44 N. E. 1123. The evidence is certainly not beyond criticism, but I think it is sufficient to warrant the conclusion that the money was received by the husband as his wife's money, to be repaid to her by him; and that, therefore, the transactions were loans. Wait, Fraud. Conv. (3d Ed.) § 305, formulates the rule from the language of the opinion in Stickney v. Stickney, 131 U. S. 227, 9 Sup. Ct. 677, 33 L. Ed. 136, as follows:

"Whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him."

This language is cited and approved in Garner v. Bank, 151 U. S. 420, 430, 14 Sup. Ct. 390, 38 L. Ed. 218, in which case the court also cited from Steadman v. Wilbur, 7 R. I. 481, 486, which is pertinent to this case:

"She cannot, indeed, when her husband becomes insolvent, convert into debts, as against creditors, former deliveries to him of her money or other property, or permitted receipts by him of the income or proceeds of sale of her separate estate, which at the time of such delivery or receipt were intended by her as gifts, to assist him in his business, or to pay their common expenses of living; and, considering the relation between them, the law would not, merely from such delivery or receipt, imply a promise on his part to replace or repay, as in case of persons not thus related, but would require more, either in express promise or circumstances, to prove that in these matters they had dealt with each other as debtor and creditor. It is not, however, as supposed, a rule of law that at the time of each delivery or receipt of the separate property of the wife by the husband the latter must expressly promise to repay the former, or to secure her out of his estate, to constitute the relation of debtor and creditor between them in regard to it. Such a promise, made before such transactions, and looking forward to and covering them, would, at law, as in common sense, avail as well to prove the character of them precisely as it would between other parties who were dealing with each other on credit and in confidence. Nor is it true that an express promise to secure or repay out of the estate of the husband is requisite in such a case to prove that her husband received her separate property as a loan, and was, therefore, entitled, as against his creditors, thus to secure and repay her. Neither at law nor in equity is inferential proof to be rejected upon such a subject, more than upon any other, although, as suggested, what are proper inferences may be modified or altered by the relation between the parties."

See, too, Plow Co. v. Wing, 85 N. Y. 421, 426. It is urged that Vogedes v. Beakes, 38 App. Div. 380, 56 N. Y. Supp. 662, should have controlled this case. In that case the court held that the county judge erred in withdrawing from the jury the question whether the transfer

was made in good faith, inasmuch as there was some evidence from which the jury might have found that there was no change of possession of personal property, and, if this had been found, the transfer was presumptively fraudulent.   We have no reason to suppose that in this case the learned special term did not consider the evidence as to nonchange of possession.   It appeared that the real estate was an undivided one-third interest in a farm, owned by an old lady, who was anxious to have the wife and her husband make their home there, and to keep the homestead.   The wife lived in another town, where she had a house of her own, but finally, when she found that she could not maintain it, her daughter took it off her hands, and left her free to go to the farm, which she did in November, 1901.   In the meantime her husband remained at the farm, but did not live in the town where it was situate.   Moreover, continuance in possession by a grantor of real estate after conveyance, while a circumstance to be considered with the other evidence, does not in itself warrant the legal conclusion that the deed was. fraudulent.   Clute v. Newkirk, 46 N. Y. 684; Every v. Edgerton, 7 Wend. 259.

No fraud is found on the part of the wife.   She testifies that when the deed was made she did not know that her husband owed money to other persons.   Certainly, the character of her husband's debt to the plaintiff, namely, a debt due as guardian of his son by his first wife, was not such as to make it probable that the second wife had cognizance thereof, and there is no testimony whatever that establishes or tends to establish her knowledge of that liability.   She cannot be charged with constructive notice.   Stearns v. Gage, 79 N. Y. 102; Parker v. Conner, 93 N. Y. 118, 45 Am. Rep. 178.   I think that the transaction even bears the test of the case cited by the learned counsel for the appellant as stating the rule (Bank v. Sherwood, 162 N. Y. 310, 318, 56 N. E. 834), which, it is to be noted, cited, inter alia, the authorities criticised in the appellant's points, namely, Dudley v. Danforth, 61 N. Y. 626, and Knower v. Bank. 124 N. Y. 552, 27 N. E. 247, 21 Am. St. Rep. 700, that the sale of property to a creditor in payment of his debt, and solely so taken, cannot be defeated by another creditor by reason of the vendor's fraudulent intent, although that intent was known to the vendee.

The judgment should be affirmed, with costs.   All concur.