AUSTIN E. PRENTICE, as County Treasurer, etc., Respondent, *v.* ABIJAH WESTON et al., Appellants.

The provisions of the "Lewis County Tax Law" (Chap. 153, Laws of 1884, amended by chap. 215, Laws of 1885), declaring that when taxes are assessed on lands and have been returned to the state comptroller or the county treasurer unpaid, it shall cease to be lawful for the owners to peel bark or cut timber on the land or to permit others to do so, and imposing a penalty for a violation of this command, are not obnoxious to the constitutional provisions protecting property rights.

Upon the return of the taxes as unpaid the sale of the land is the sole remaining resource for the collection of the taxes, and it is competent for the legislature to restrain acts which would strip the land of its chief value and tend to make unavailing the final remedy.

The legislature may prohibit a use of private property which violates the duty the owner owes to his neighbor or to the state.

(Argued October 16, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made January 10, 1888, which affirmed an order of Special Term overruling a demurrer interposed by defendants and from an interlocutory judgment against the defendants entered thereon. (Reported below, 47 Hun, 121.)

This action was brought by plaintiff, as county treasurer of Lewis county, to recover penalties under section 17 of chapter 153 of the Laws of 1884, as amended by chapter 215 of the Laws of 1885.

The complaint alleged, in substance, that defendants were the owners of certain lands in the county of Lewis, upon which taxes had been assessed and returned to the county treasurer as unpaid; that thereafter, and while said taxes remained unpaid, the defendants cut and removed from said lands a large quantity of timber, whereby they became liable to the penalty imposed by said act.

Defendants demurred to the complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action, and that plaintiff had no legal capacity to sue.

*V. P. Abbott* for appellants.   This action cannot be maintained, because section 17 of chapter 153 of Laws of 1884 does not create any right of civil action, but creates a crime or misdemeanor, and provides a penalty therefor.   (Penal Code, §§ 3–6.)   If a civil action can be maintained under section 17, it must be brought in the name of the supervisor of the town of Diana under supervision of the county treasurer.   (Code of Civil. Pro. § 1926; *Town of Chautauqua* v. *Gifford,* 8 Hun, 154; *Town of Lewis* v. *Marshall,* 9 Abb. N. C. 103, *S. C.,* 56 N. Y. 663; *Gleason* v. *Youman,* 9 Abb. N. C. 108; *Bridges* v. *Ford,* 92 N. Y. 575.)   The town of Diana cannot maintain this action, either in its own name or by the county treasurer, because it has no capacity to receive penalties upon recovery.   (1 R. S. [7th ed.] 805; *Lorillard* v. *Town of Monroe,* 11 N. Y. 392; *Gaylor* v. *Herrick,* 42 Barb. 74; *People ex re'. Van Keuren* v. *Town Auditors,* 74 N. Y. 310.)   The act of 1884 is a local act applying only to the county of Lewis, and cannot be enlarged in its scope beyond one subject, which subject must be expressed in its title.   (Const., art. 3, § 16.)   Being an act to enforce the collection of taxes in Lewis county, it can be nothing else. (*Gaskin* v. *Meek,* 42 N. Y. 188; *People* v. *Allen,* Id. 119; *People* v. *Suprs. of Chautauqua,* 43 id. 10; *Huber* v. *People,* 49 id. 134; *In re Pau',* 94 id. 197; *In re Lands in Flatbush,* 60 id. 398.)   Being complete so far as it relates to the collection of taxes, it may be enforced, with the exception of section 17, which may be disregarded.   (*People ex rel. City of Rochester* v. *Briggs,* 5 N. Y. 565.)   It is unconstitutional because it imposes an excessive fine.   (Const., art. 1, § 5; *In re Jacobs,* 98 N. Y. 106; *People* v. *Marks,* 99 id. 386; *Stewart* v. *Palmer,* 74 id. 190–194.)   It is unconstitutional because in violation of the bill of rights, which guarantees to every man that his property shall not be taken without due process of law. (*People* v. *Eq Trust Co.,* 96 N. Y. 396.)   If this penalty is intended to go into the treasury of the town of Diana, for general purposes, it takes individual property without due process of law.   (*Granger* v. *City of Buffalo,* 6 Abb. N. C. 244.)

*C. S. Mereness* for respondent. The legislature has the right to direct the levying of a tax against the property of a town to pay a claim for which no action would lie, and that, notwithstanding, the voters of the town had voted not to pay the claim. (*Town of Guilford* v. *County of Chenango*, 13 N. Y. 143.) Statutes similar to the one in question have the sanction of the courts. (*People* v. *Supervisors of Ulster Co.*, 36 Hun, 491, 497.) The statute in question, at most, only restrains waste on the lands in question until the taxes are paid, to that extent it is remedial and entitled to a fair construction, to the end that the object sought to be accomplished, may be accomplished. (Potter's Dwarris on Statutes, 247, note 36.) Every intendment is in favor of the constitutionality of legislative enactments; the court will not adopt a doubtful construction for the purpose of invalidating them. (*Kerrigan* v. *Force*, 68 N. Y. 381.) Where the words are obscure, the intent may be inferred from the cause or necessity of the act. (*People* v. *Asten*, 62 N. Y. 623.) The infliction of a penalty by the act was not in excess of the power of the legislature. (*Bertholf* v. *O'Reilly*, 74 N. Y. 509; 24 Hun, 516; *Seward* v. *Beach*, 29 Barb. 289.) The plaintiff, as county treasurer, was entitled to recover the penalties in question. (*Looney* v. *Hughes*, 26 N. Y. 514, 517; *Supervisors of Galway* v. *Stimson*, 4 Hill, 136.) The title of the act is sufficient. (*In re Mayor, etc.*, 50 N. Y. 504, 553; *Sun Ins. Co.* v. *Mayor, etc.*, 8 id. 241, 253; *Litchfield* v. *Vernon*, 41 id. 123, 139; *People ex rel.* v. *Comrs. of Taxes*, 47 id. 501, 505; *In re Astor*, 50 id. 363, 367; *Tifft* v. *City of Buffalo*, 82 id. 204; *In re Knaust*, 101 id. 189, 194.) To justify the courts in declaring a statute unconstitutional, there must be a clear case of conflict with the Constitution and in which there is no rational doubt. (*Roosevelt* v. *Godard*, 52 Barb. 533; *People* v. *Bennett*, 54 id. 480; *Macomber* v. *New York*, 17 Abb. Pr. 35; *Ex parte McCollum*, 1 Cow. 550.) In considering a demurrer, the court is confined to the grounds specified in it, and a demurrer cannot be sustained upon unspecified demurrable defects

appearing upon the face of the complaint. (*Carter* v. *De Camp*, 40 Hun, 258.)

FINCH, J.   Most of the objections to the judgment appealed from have been fully and satisfactorily met by the opinion of the General Term, with which we agree, and to which we refer rather than repeat the discussion.   One question, however, has been argued before us which, perhaps, was little pressed at the General Term, and as to which some further expression of opinion seems needed.

The constitutionality of the law under which the judgment against the defendant was rendered is now assailed upon the ground that it is an arbitrary interference with rights of property; and the proposition is maintained that the legislature has no power to make the use of a citizen's property by its owner in his own way a penal or criminal offense.   That is too broad a statement.   It does not take into account the duty which the citizen owes to his neighbor and to the state.   He may not use his own property so as needlessly to injure or annoy another, and there are numerous cases which forbid an occupation, lawful in itself, because of the injury it inflicts. One may sell and transfer his property freely, but if he transfers it in fraud of his creditors, and with intent to hinder, delay and defraud them, he is guilty of a misdemeanor and amenable to the criminal law.   In like manner, as between mortgagor and mortgagee, the latter may restrain by injunction, and enforce, if need be, by the peril of fine and imprisonment, any destruction of timber or stripping of the land, when, by the act, his security is menaced or destroyed.

Something akin to that is the purpose and operation of the Lewis county tax law.   Under that the county pays to the state its entire tax for state purposes, taking upon itself the burden and risk of so much as may be uncollected and assuming the sole responsibility of all collections.   There are in the county areas of land whose principal and chief value lies in the bark and timber of the hemlock forests.   If those trees are felled and stripped of their bark, the substantial value of the land is

gone.    When the tax is assessed it becomes a lien on the land, and the law provides that when such taxes have been assessed and have been returned to the comptroller or treasurer as unpaid it shall cease to be lawful for the owner to peel bark or cut timber upon the land or permit others to do such work until the taxes are paid, and a serious penalty is annexed for any infraction of the command.    Practically this is no more than saying that one who holds his land subject to a lawful lien, shall not imperil that lien by removing the bark and timber which constitute its chief and principal value, and leave the tax uncollected and incapable of collection, it having been demonstrated by the return to the treasurer that the land has become the only source or means of payment.    The law, therefore, is not an unwarrantable interference with rights of property, but simply enforces by an adequate penalty the performance of a duty which is due to the county acting in behalf of the state.    It is to be noted that the prohibition and the penalty relate only to such lands as, under the tax laws, can become subject to be returned to the comptroller or, in his stead, to the county treasurer for non-payment of taxes, and attach only when such return has been made.    That return is somewhat analogous to the return of an execution unsatisfied, and marks the period when ordinary remedies have failed.    The return to the comptroller lays a foundation for the sale of the land for taxes in arrears.    Up to that time the owner may freely cut his timber and peel his bark, and use the proceeds to pay his taxes; but if he does not pay and the collector is unable to find any personal property out of which to collect them, and so returns them to the treasurer as unpaid, the proceedings have reached a point where the sale of the lands is the sole remaining resource; and at that point it is competent for the legislature to restrain acts which would strip the land of its sole or chief value and tend to make unavailing the final remedy.    Such an enactment does not transcend the legislative power or unwarrantably restrain the citizen's use of his own property.

The judgment should be affirmed, with costs, but with leave

to the defendants, upon payment of all costs in the courts below, and of this appeal, to serve an answer herein, such costs to be paid and the answer served within twenty days after service upon them of the order herein affirming the judgment.

All concur, except RUGER, Ch. J., not voting.

Judgment accordingly.