The People ex rel. George Kemp, Appellant, v. Albert F. D'Oench as Superintendent, etc., Respondent.

111   359
149   201

The act of 1885 (Chap. 454, Laws of 1885), which provides that the "height of all dwelling-houses and of all houses used, or intended to be used as dwellings for more than one family, thereafter to be erected in the city of New York, * * * shall not exceed * * * eighty feet upon all streets and avenues exceeding sixty feet in width," does not apply to hotels, but is mainly applicable to tenement and apartment houses.

*It seems* that the legislature, in the exercise of the police power under the Constitution, had power to pass such an act.

Where an application to the superintendent of buildings in said city to approve the plans and specifications for an addition to a hotel was denied because the height of the proposed structure was over eighty feet, *held*, a *mandamus* was proper to compel such approval.

(Argued October 16, 1888; decided November 27, 1888.)

Appeal from order of the General Term of the Court of Common Pleas for the city of New York, made May 15, 1888, which affirmed an order of Special Term denying an application for a peremptory writ of *mandamus* requiring the superintendent of buildings of said city to approve the specifications and plans for a proposed addition to the Buckingham hotel in said city.

The relator's application for such approval was denied upon the ground that the proposed structure was more than eighty feet in height, and so was prohibited by the act. (Chap. 454, Laws of 1885.)

*Francis Lynde Stetson* for appellant. The act chapter 454 of the Laws of 1885, in so far as it undertakes, without compensation, to absolutely destroy an ancient and well recognized right of property, is unconstitutional. (*Kelsey* v. *King*, 33 How. Pr. 39–43; *Commonwealth* v. *Alger*, 7 Cush. 53, 84; *Vanderbilt* v. *Adams*, 7 Cow. 349; *Wynehamer* v. *People*, 13 N. Y. 378.) The constitutionality of the act can be affirmed only upon the theory that it is an exercise of the police power. (*People ex rel.* v. *Squires*, 107 N. Y. 239; *In re Jacobs*, 98 id. 98; *In re Otis*, 90 id. 52.) This police power, though indefinite, is not without limitation.

(Tiedman's Treatise, 439.) It is not possible to justify such a destruction of property as is contemplated by the act of 1885, for the benefit of adjoining lands, either public or private. (*In re Cheesebrough*, 78 N. Y. 232.) If constitutional, the statute, being in derogation of common right, must be strictly construed. (*Millerd* v. *R. R. Co.*, 9 How, Pr. 238–240; *Wash. Cemetery* v. *P. P. & C. I. R. R. Co.*, 68 N. Y. 591–594; *Vestry Chelsea* v. *King*, 17 C. B. [N. S.] 629; *Burnside* v. *Whitney*, 21 N. Y. 149; Potter's Dwarris, 240; *Van Horne* v. *Dorrance*, 2 Dall. 304, 316; *Hart* v. *Cleis*, 8 Johns. 43; Pomeroy's note to Sedgwick on Statutory Construction [2d ed.] 271.) The legislature did not intend to include within the operation of this act of June 9, 1885, any buildings other than "dwelling-houses," according to the meaning of that term as theretofore used in the building laws relating to New York city; and, as thus employed, the term "dwelling-house," did not include building erected specifically and exclusively for use as a "hotel." (*In re Paul*, 94 N. Y. 497; Laws 1815, chap. 155; Laws 1823, chap. 122; Laws 1830, chap. 291; Laws 1831, chap. 212; Laws 1833, chap. 307; Laws 1834, chap. 156, 220; Laws 1849, chap. 84; Laws 1850, chap. 120; Laws 1851, chap. 66; Laws 1856, chap. 188; Laws 1862, chap. 356; Laws 1866, chap. 873; Laws 1867, chap. 939; Laws 1871, chap. 625; act of 1882, chap. 410, §§ 476, 477, 499, 502; Laws 1887, chap. 566, §§ 5, 26.) While it is true that for some purposes and in some statutes the term "dwelling-house" includes a "hotel," such not being the invariable meaning of the word, it is not so to be construed here to the impairment of relator's right. (*State* v. *Troth*, 36 N. J. Law, 422; *Fire Department* v. *Buhler*, 1 Daly, 391, 35 N. Y. 177; 9 How. Pr. 238–240.) Without compensation this property right cannot be diminished merely for the good of adjoining property. (78 N. Y. 232.)

*William L. Findley* for respondent. The term dwelling-house, in its usual and ordinary acceptation, includes a hotel.

(Worcester's Dict.; Penal Code, §§ 492, 502; *Fire Dept.* v. *Buhler*, 1 Daly, 391; Laws of 1887, chap. 566, § 5; *State* v. *Troth*, 36 N. J. L. 422.) Both the natural signification of the words used, and the reason for the law itself, call for a construction broad enough to include an "hotel" as among the inhabited buildings. (*Hudson Iron Co.* v. *Alger*, 54 N. Y. 173–175; *Fire Dept.* v. *Buhler*, 35 id. 181.) The act, being a police regulation, is within the constitutional powers and prerogatives of the legislature. (*Met. Board of Health* v. *Heiser*, 37 N. Y. 668; *Health Dept.* v. *Knoll*, 70 id. 530; *Powell* v. *Com. of Patents*, 27 U. S. 678.)

Earl, J. It is provided in the act chapter 454 of the Laws of 1885 that "the height of all dwelling houses and of all houses used or intended to be used as dwellings for more than one family" thereafter to be erected in the city of New York shall not exceed eighty feet in streets and avenues exceeding sixty feet in width.

We have no doubt of the competency of the legislature in the exercise of the police power under the Constitution to pass such an act, and the sole question, therefore, now to be determined is whether the act applies to hotels. We think it does not. In interpreting statutes the words used should receive their ordinary and popular import; and, according to general usage, a dwelling-house is not a hotel and a hotel is not a dwelling-house. Sometimes it may be that the word "dwelling-house" should, for the purpose of giving the statute its intended effect, and operation embrace hotels. But such an unusual and extended meaning should not be given to the word unless it can be plainly seen that such was the legislative intention. Here we have no reason to suppose that the legislature intended the act should apply to hotels. As simple, private dwelling-houses are rarely, if ever, built eighty feet high, the main purpose of the act must have been to regulate the height of tenement and apartment houses, which are becoming very numerous in New York, which are usually built in the midst

of dwelling-houses and in which several families live and carry on all the operations of housekeeping. There is not the same reason for regulating the height of hotels not usually built in the midst of dwelling-houses, which are mainly occupied by temporary adult guests, which are under the supervision of one management and which can never become very numerous. While stores, factories, warehouses, buildings for offices and numerous other buildings may be erected without any restriction as to height we can see no reason to suppose that the language used in this act was meant to embrace hotels, nearly all of which in the city of New York have for many years been erected of greater height than the limit prescribed in the act.

The orders of the Special and General Terms should, therefore, be reversed, and a peremptory writ of *mandamus* issued without costs.

All concur.

Ordered accordingly.