# Court of Appeals.

April 14, 1896.

## PEOPLE v. HENRY J. HAVNOR.

1. CONSTITUTIONAL LAW—POLICE POWER.

The exercise of the police power by the legislature, subject to the limitation that the real object of the statute must appear, upon inspection, to have a reasonable connection with the welfare of the public, is not in conflict with the constitution.

VOL. XII—4

**2. SAME.**

When thus exercised, even though the effect is to interfere to some extent with the use of property or the prosecution of a lawful pursuit, it is not regarded as an appropriation of property or an encroachment upon liberty.

**3. SAME—SUNDAY LAWS.**

An act, the object of which is to regulate the prosecution of a particular trade on Sunday, by prohibiting it from being carried on as a business, to which the prohibition applies only after a certain hour, is not unconstitutional.

**4. SAME.**

Laws, tending to promote the physical welfare of the citizen, are proper under the police power and valid under the constitution.

**5. SAME.**

The fourteenth amendment to the federal constitution is not designed to interfere with the exercise of the police power by the state for the protection of health or the preservation of morals.

**6. SAME.**

Such amendment does not relate to territorial arrangements made for different portions of a state; nor to legislation which, in carrying out a public purpose, is limited in its operation, but, within the sphere of its operation, affects alike all persons similarly situated.

Appeal from a judgement convicting defendant of carrying on the business of a barber in the city of New York after one o'clock P. M., on Sunday.

Appeal from supreme court, appellate division, first department.

Henry J. Havnor was convicted of carrying on the business of a barber in the city of New York after 1 o'clock p. m. on Sunday. The judgment of the trial court was affirmed by the appellate division of the supreme court, and defendant appeals. Affirmed.

In June, 1895, the defendant was engaged in business as a barber at No. 57 West Thirty-Third street in the city of New York, and had been for the period of nine years. His establishment included "eleven ordinary chairs, three baths and two ladies' hairdressing chairs." He kept his shop open on Sunday afternoon until 8 o'clock, for the purpose of shaving his customers and cutting and dressing their hair. Some of his patrons, who worked late Saturday night and rose late the next day, were in the habit

of being shaved on Sunday afternoon, as well as others, who could not shave themselves, and yet desire to be shaved every day as a matter of cleanliness. On Sunday, June 9, 1895, after 1 o'clock in the afternoon, the defendant's shop was open and he was present while one of his employes shaved a customer, and payment for the service was made to the defendant in person. No other material facts appeared upon the trial, which resulted in the conviction of the defendant, who was fined five dollars. The judgment was affirmed by the appellate division, and the defendant brought this appeal.

Albert I. Sire, for appellant.

John D. Lindsay, for respondent.

VANN, J.—The main ground upon which the defendant asks us to reverse the judgment against him is that the statute under which he was convicted is in conflict with that provision of the constitution which provides that "no person shall be deprived of life, liberty or property without due process of law." Const. art. 1, § 6. The statute in question, entitled "An act to regulate barbering on Sunday," provides that "any person who carries on or engages in the business of shaving, hair cutting or other work of a barber on the first day of the week shall be deemed guilty of a misdemeanor * * * provided that in the city of New York and the village of Saratoga Springs barber shops * * * may be kept open and the work of a barber performed therein until one o'clock of the afternoon of the first day of the week." Laws 1895, c. 823. The defendant claims that this statute deprives him to a certain extent of his "liberty," by preventing him from carrying on a lawful calling as he wishes, and also of his "property," by preventing the free use of his premises, tools, and labor, and thus rendering them less productive. It is not claimed that his occupation is of a noisy nature, or that he so carried on his business as to disturb the peace, quiet, and good order of the neighborhood, or that the act for which he was convicted, if done on any day of the week other than the first, or at any hour of that day prior to one o'clock in the afternoon, would

have been a violation of law. Nor is it claimed that the conviction was authorized by the common law, or that it was based upon any statute except the one above cited, and, indeed, the judgment of the court of special sessions expressly refers to that act, and adjudges the defendant guilty of a misdemeanor because he violated its command.

The phrase "due process of law" is not satisfied by a judgment pronounced, after an opportunity to be heard, by a court of competent jurisdiction, in accordance with the provisions of a statute, unless that statute accords with the provisions of the fundamental law. Wynehamer v. People, 13 N. Y. 378, 393. In a broad sense, whatever prevents a man from following a useful calling is an invasion of his "liberty," and whatever prevents him from freely using his hands or chattels is a deprivation of his "property." Bertholf v. O'Reilly, 74 N. Y. 515; In re Jacobs, 98 N. Y. 98, 105. Yet, during the history of our state, many laws have been passed which, to some extent, have interfered with the right to liberty and property; but their accord with the constitution has seldom been questioned, and, when questioned, has been generally sustained. The power of taxation, the right to preserve the public health, to protect the public morals, and to provide for the public safety, may interfere somewhat with both liberty and property, yet proper statutes to effect their ends have never been held to invade the guaranties of the constitution. While the confinement of the insane or of those afflicted with contagious diseases infringes upon personal liberty and the destruction of buildings to prevent the spread of fire, the exercise of the power of eminent domain, and the prevention of cruelty to animals encroach upon the right to property, still the proper exercise of these powers, under the authority of the legislature, although constant and known of all men, gives rise to no question of moment under the constitution. The sanction for these apparent trespasses upon private rights is found in the principle that every man's liberty and property is, to some extent, subject to the general welfare, as each person's interest is presumed to be promoted by that which promotes the interest of all. Dependent upon this principle is the great police power, so universally recognized but so difficult to define, which guards the health, the welfare,

and the safety of the public. While this power may not be employed ostensibly for the common good, but really for an ulterior purpose, when its object and effect are manifestly in the public interest, as was said in the Jacobs Case, " it is very broad and comprehensive, and    *    *    *    under it the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other." Page 108. In the exercise of this power the legislature has the right generally, to determine what laws are needed to preserve the public health and protect the public safety, yet its discretion in this respect is not wholly without limit, for our courts have been steadfast in holding that the statute must have some relation to the general welfare; that the purpose to be reached must be a public purpose, and that " the law must in fact be a police law." Thus, it has been held that " an act to improve the public health by prohibiting the manufacture of cigars and preparation of tobacco in any form in tenement houses in certain cases " (Laws 1884, c. 272), was unconstitutional, because it did not tend to promote the public health, and that this was not the end actually aimed at. In re Jacobs, supra. For the same reason " an act to prevent deception in sales of dairy products" (Laws 1884, c. 202) was declared to conflict with the constitution, as it absolutely prohibited an innocent industry that was not fraudulently conducted, solely for the reason that it competed with another, and might reduce the price of an article of food. People v. Marx, 99 N. Y. 377; 2 N. E. 29. When, however, the act was so changed as to make the substance accord with the title (Laws 1885, c. 183), it was held to be constitutional. People v. Arensberg, 105 N. Y. 123; 11 N. E. 277. In a recent case, an act prohibiting the sale of any article of food, upon the inducement that something would be given to the purchaser as a premium or reward (Laws 1887, c. 691), was held to be an unauthorized invasion of the rights of property and an improper exercise of the police power of the state. People v. Gillson, 109 N. Y. 389; 17 N. E. 343. It was expressly declared in that case that the courts must be able to see, upon a perusal of the enactment, that there is some fair, just and reasonable connection between it and the common good, and that, unless such relation

exists, the statute cannot be upheld as an exercise of the police power. Subject, however, to the limitation that the real object of the statute must appear, upon inspection, to have a reasonable connection with the welfare of the public, the exercise of the police power by the legislature is well established as not in conflict with the constitution. Heister v. Board, 37 N. Y. 661, 669; In re Deansville Cemetery Ass'n, 66 N. Y. 569; In re Ryers, 72 N. Y. 1, 7; People v. D'Oench, 111 N. Y. 359; 18 N. E. 862; People v. Ewer, 141 N. Y. 129; 36 N. E. 4; People v. Warden of City Prison, 144 N. Y. 529; 39 N. E. 686; Health Department of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32; 39 N. E. 833. When thus exercised, even if the effect is to interfere to some extent with the use or property or the prosecution of a lawful pursuit, it is not regarded as an appropriation of property or an encroachment upon liberty, because the preservation of order and the promotion of the general welfare, so essential to organized society, of necessity involve some sacrifice of natural rights. Phelps v. Racey, 60 N. Y. 10, 14; Prentice v. Weston, 111 N. Y. 460; 18 N. E. 720.

The vital question, therefore, is whether the real purpose of the statute under consideration has a reasonable connection with the public health, welfare, or safety. The object of the act, as gathered from its title and text, was to regulate the prosecution of a particular trade on Sunday, by prohibiting it from being carried on as a business, on that day, except in two localities, to which the prohibition applies only after a certain hour. It does not require the observance of the Sabbath as a holy day, or in any sense as a religious institution, as is evident from the fact that the entire day is left open to all secular employments but one, and a part of the day, in certain places, to that. There is nothing in the act to prevent the defendant from carrying on his trade " in any manner or in any place that he pleases. He is simply prohibited from carrying on that trade upon Sunday." The peculiar character of the first day of the week, not simply on account of the obligations of religion, but as a day of rest and recreation, has been recognized for time out of mind both by the legislature and the courts. Statutes passed upon the subject while we were a colony of Great Britain, as well as under the various constitu-

tions in force since our organization as a state, have, so far as appears, been uniformly enforced by the courts. 29 Car. II, c. 7; 2 Greenl. Comp. 89; and Laws & Cts. 467; 2 Rev. Laws, 194; 1 Rev. St. p. 675, § 70; Laws 1788, c. 42; Laws 1801, c. 34; Laws 1847, c. 349; Laws 1883, c. 358; Pen. Code, § 263. Similar laws in other states, and especially those which require the closing of places of business on Sunday, have generally been sustained. People v. Bellet, 99 Mich. 151; 57 N. W. 1094; Voglesong v. State, 9 Ind. 112; Shover v. State, 10 Ark. 259; Warner v. Smith, 8 Conn. 14; Bloom v. Richards, 2 Ohio St. 287; Specht v. Com., 8 Pa. St. 312; Com. v. Has, 122 Mass. 40; Bohl v. State, 3 Tex. App. 683; Cooley; Const. Lim. (5th ed.), 589, 726; Tied. Lim. 183; Hare, Const. Law, 766.

While questions have been raised as to noiseless and inoffensive occupations that can be carried on by one individual without requiring the services of others, as well as to persons who observe the seventh instead of the first day of the week, still the rule is believed to be general throughout the Union, although not generally enforced, that the ordinary business of life shall be suspended on Sunday, in order that thereby the physical and moral well-being of the people may be advanced. The inconvenience to come is not regarded as an argument against the constitutionality of the statute, as it is an incident to all general laws. Sunday statutes have been sustained as constitutional almost without exception; the most notable instance to the contrary (Ex parte Newman, 9 Cal. 502), decided by a divided court in an early day in California, having been subsequently overruled by the courts of that state (Ex parte Andrews, 18 Cal. 685; Ex parte Koser, 60 id. 202). The leading case in our own state upon the subject is that of Lindenmuller v. People, 33 Barb. 548, in which Judge Allen discussed the common law, as well as legislation affecting the Sabbath, with great force and clearness. He held, in substance, that the body of the constitution recognizes Sunday as a day of rest, and an institution to be respected, by not counting it as a part of the time allowed to the governor for examining bills submitted for his approval; that the Sabbath exists as a day of rest by the common law, without the necessity of legislative action to establish it; and that the legislature has

the right to regulate its observance as a civil and political institution. That case was expressly approved in Neuendorff v. Duryea, 69 N. Y. 557, 561, 563, and was referred to as one " which has never been questioned in a court of higher or equal authority," and " as declaring the law of this state." It was cited with approval in People v. Moses, 140 N. Y. 214, 215 : 35 N. E. 499, where Judge Earl, speaking for a majority of the court, said: " The Christian Sabbath is one of the civil institutions of the state, and that the legislature, for the purpose of promoting the moral and physical well being of the people, and the peace, quiet, and good order of society, has authority to regulate its observance and prevent its desecration by any appropriate legislation, is unquestioned." While works of charity and necessity have usually been excepted from the effect of laws relating to the Sabbath, and sometimes, also, those persons who keep another day of the week, still quiet pursuits have not, even when they can be carried on without the labor of others, because general and observance of the day, so far as practical, have been deemed essential to the interest of the public, including, as a part thereof, those who prefer not to keep the day, as their health and morals are entitled to protection, even against their will, the same as any other class in the community. According to the common judgment of civilized men, public economy requires, for sanitary reasons, a day of general rest from labor, and the day naturally selected is that regarded as sacred by the greatest number of citizens, as this causes the least inconvenience through interference with business. Lindenmuller v. People, supra.

It is to the interest of the state to have strong, robust, healthy, citizens, capable of self-support, of bearing arms, and of adding to the resources of the country. Laws to effect this purpose, by protecting the citizen from overwork, and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare. Independent of any question relating to morals or religion, the physical welfare of the citizen is a subject of such primary importance to the state, and has such a direct relation to the general good, as to make laws tending to promote that object proper under the police power, and hence valid under the constitution, which " presup-

poses its existence, and is to be construed with reference to that fact." Village of Carthage v. Frederick, 122 N. Y. 268, 273; 25 N. E. 480. The statute under discussion tends to effect this result, because it requires persons, engaged in a kind of business that takes many hours each day, to refrain from carrying it on during one day in seven. This affords an opportunity, recurring at regular intervals, for rest, needed both by the employer and employed, and the latter, at least, may not have the power to observe a day of rest without the aid of legislation. As Mr. Tiedeman says, in his work on Police Powers: "If the law did not interfere, the feverish, intense desire to acquire wealth, * * * inciting a relentless rivalry and competition, would ultimately prevent not only the wage earners, but likewise the capitalists and employers themselves, from yielding to the warnings of nature, and obeying the instinct of self-preservation, by resting periodically from labor." Tied. Lim. 181. As barbers generally work more hours each day than most men, the legislature may well have concluded that legislation was necessary for the protection of their health. We think that this statute was intended and is adapted to promote the public health, and thereby to serve a public purpose of the utmost importance, by promoting the observance of Sunday as a day of rest. It follows, therefore, that it does not go beyond the limits of legislative power by depriving any one of liberty or property within the meaning of the constitution.

The learned counsel for the defendant, however, criticizes the act in question as class legislation, and claims that it is invalid under the fourteenth amendment to the constitution of the United States, because it denies to barbers who do not reside in New York or Saratoga the equal protection of the laws. That amendment does not relate to territorial arrangements made for different portions of a state, nor to legislation which, in carrying out a public purpose, is limited in its operation, but, within the sphere of its operation, affects alike all persons similarly situated. Missouri v. Lewis, 101 U. S. 22, 30; Barbier v. Connolly, 113 U. S. 27, 31; 5 Sup. Ct. 357. It was not designed to interfere with the exercise of the police power by the state for the protection of health, or the preservation of morals. Powell v. Pennsylvania,

127 U. S. 678, 683 ; 8 Sup. Ct. 992, 1257. The statute treats all barbers alike within the same localities, for none can work on Sunday outside of New York and Saratoga, but all may work in those places until a certain hour. All are, therefore, treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. Hayes v. Missouri, 120 U. S. 68; 7 Sup. Ct. 350. As was said by the learned appellate division in deciding this case: "If the legislature has power to regulate the observance and prevent the desecration of the Sabbath, it has the power to say what acts in the different localities of the state it is necessary to prohibit to accomplish this purpose. It is quite conceivable that an act in one locality, thickly settled, should be prohibited, which in sparsely settled districts of the state could be allowed, and for this reason an act might be objectionable in one district, but not in another. All of these regulations have in view the proper observance of the day, and are within the discretion of the legislature."

We think that the statute violates no provision of either the federal or state constitution, and that the judgment appealed from should, therefore, be affirmed.

GRAY, J. (dissenting).—This enactment can only find its justification, in my opinion, in an attempted exercise of the police power of the state. I can not suppose that it is to be defended as a proper or reasonable extension of the " Sunday law " of the state. That law includes in the works of necessity, which it permits, " whatever is needful for the good order, health or comfort of the community." The occupation of the barber has not been deemed unlawful under it, and it would look like a relapse into the narrow groove of earlier Puritanical belief if we should now regard it as inconsistent with the due observance of the Sabbath day. Conceding, as I do, to the legislature a wide range in the exercise of what is known as the police power, I think that, in this piece of legislation, it has overstepped the limits, and has infringed upon the constitutional guaranties which, in effect, assure to us the enjoyment of our liberty and of our property in all reasonable ways. While it has been frequently observed that it is difficult to define the limits of the police power of the state, it is, nevertheless, agreed that an enactment

in that direction must be one having reference to the comfort, the safety, or the welfare of society. A line of decisions in the federal and state courts has erected these monuments to denote the boundaries of this extraordinary power, which is deemed to reside in the legislative agents of the people of the state. We know that this power is not above the constitution, but that it is subject to it; and when legislation violates any of its provisions, in the letter or the spirit, it is the duty of the courts, upon the faithful performance of which the people confidently rely to interpose the barrier of their judgments against its enforcement. Under the constitutional guaranty, every one is at liberty to follow any lawful avocation, which is not injurious to the community, and to enjoy its fruits; and any interference by the legislature, under the guise of a police regulation, must be seen by the court to have some real inference to the common good. The mere declaration of the legislature is not conclusive. It cannot seriously be said that the defendant's business is one that conflicts with the comfort, safety, or welfare of the community, when carried on upon the first day of the week, called "Sunday." It is, in its nature, a peaceable occupation, and, as usually conducted, cannot and does not interfere with the quiet of the day, or with the performance of any citizen of the duties of the day, however appointed. It is one that not merely conduces to the comfort of the individual, but promotes his decent appearance as a member of the community, and it is quite impossible to conceive of the business as in any reasonable way militating against the requirements of society with respect to the Sabbath day. The learned justices of the appellate division have thought that it is discretionary with the legislature to enact laws for the regulation of the observance of the Sabbath. That discretion does exist, so far as to prevent what is, or amounts to, a desecration of the day, as was decided in People v. Moses, 140 N. Y. 215; 35 N. E. 499; but it should not be deemed to exist, so far as to interfere with a peaceable calling, and one more or less necessary to the comfort and decency of members of the community.

But this legislation, in my judgment, is particularly objectionable, and deserving of judicial condemnation, for the reason that it discriminates unreasonably in dealing with those who are

engaged in the pursuit of a lawful avocation.   It certainly must
be implied, in our governmental system, that legislation shall be
equal as to all and just in its commands.   If that were not so,
government by the people for the people would exist but in
name.   The fundamental guaranties, on which rest our social
structure, would be delusive.   The legislature cannot act arbi-
trarily; and if this act is to be defended as a proper exercise of
the police power, then it is without shadow of excuse, in dis-
criminating against barbers who do not reside in the city of New
York or in the village of Saratoga Springs.   Legislation which
discriminates in this wise is not in harmony with the idea of our
democratic form of government.   Where it touches the pursuit by
individuals of a lawful avocation, it should act with impartial
hand, affecting all alike and subjecting every one interested to the
same restraints for the sake of the common good.   There is no
sensible or plausible reason for the discrimination made by this
law.   It is unnecessary, unreasonable, and hostile to the true
policy of the state.   Regarded as an exercise of the police power
it cannot be justified as either necessary for the good of society, or
as conducive to its welfare; and it is violative of constitutional
principles, in that it restrains unduly and unequally the liberty of
those engaged in a lawful business.

I think the judgment appealed from should be reversed, and
that the defendant should be discharged.  ·

BARTLETT, J. (dissenting).—While this court has very
properly held that the Christian Sabbath is one of the civil in-
stitutions of the state, and that the legislature may regulate its
observance and prevent its desecration (People v. Moses, 140
N. Y. 214; 35 N. E. 499), I think the case at bar presents an
instance where the lawmakers have overstepped the bounds of
legitimate legislation in the alleged exercise of the police power.
Chapter 823, Laws 1895, provides substantially that any person
who engages in the business of a barber on the first day of the
week shall be deemed guilty of a misdemeanor; provided that,
in the city of New York and the village of Saratoga Springs,
barber shops may be kept open until 1 o'clock of the afternoon of
the first day of the week.   The Penal Code provides (section

263) that all labor on Sunday is prohibited, excepting the works of necessity or charity. These works are then defined as including "whatever is needful during the day for the good order, health or comfort of the community." The legislature, by permitting barber shops to remain open for a portion of the first day of the week in two localities of the state, necessarily proceeded upon the theory that the business of the barber is a work of necessity, contributing to the comfort of the community. I think it clearly within the power of the legislature, in order to regulate the observance of the Sabbath, to control the hours which a barber shop may be kept open on the first day of the week, even if the comfort of the community may be to some extent interfered with in so doing. This principle is recognized by the Penal Code (section 267), which prohibits the public sale of any property upon Sunday, but allows articles of food to be sold and supplied before ten o'clock in the morning, and certain articles of personal property to be sold during the entire day. If, then, the business of the barber is a work of necessity, contributing to the comfort of the community, can it be a reasonable exercise of the police power to arbitrarily extend the comfort of a Sunday morning shave to the inhabitants of the city of New York and the village of Saratoga Springs, and deny it to the rest of the state, including great cities like Brooklyn and Buffalo?

I think the act under consideration is vicious class legislation, and in direct violation of the fourteenth amendment of the constitution of the United States, which provides that no state "shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The act is, in my judgment, a specimen of grotesque and absurd legislation, resting upon no principle of public policy, and utterly indefensible under any reasonable or proper exercise of the police power. The supreme court of the United States has held that the fourteenth amendment does not impair the police power of a state (Barbier v. Connolly, 113 U. S. 27; 5 Sup. Ct. 357); and it has further decided that it does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is operated (Hayes v. Missouri, 120 U. S. 68, 71; 7 Sup. Ct. 350).

There is, however, nothing in these adjudications which will sustain the act under consideration. In the exercise of the police power, the legislature is vested with the amplest discretion, the precise limits of, which can not be accurately defined, but there is a point beyond which that discretion can not be exercised. The language of Judge Peckham in delivering the opinion of this court in People v. Gillson, 109 N. Y. at page 401 ; 17 N. E. 343, is apposite. The learned judge, referring to In re Jacobs, 98 N. Y. 98, said : " As is also said in the last case, it is generally for the legislature to determine what laws and regulations are needed to protect the public health and serve the public comfort and safety, and if its measures are calculated, intended, convenient, or appropriate to accomplish such ends, the exercise of its discretion is not the subject of judicial review. But those measures must have some relation to these ends. Courts must be able to see, upon a perusal of the enactment, that there is some fair, just, and reasonable connection between it and the ends above mentioned. Unless some relation exist, the enactment can not be upheld as an exercise of the police power."

Can it be said, after a perusal of the act in question, that its provisions are a reasonable and proper exercise of the police power? I think not. It is an arbitrary, discriminating exercise of that power, which ought not to be tolerated. The good offices of the barber, being a work of necessity, needful on Sunday for the comfort of the community, should be extended to all portions of the state alike. It is true the legislature might allow the barber shops to remain open longer on Sunday in a great city than in a country village ; but, subject to reasonable regulation as to hours, all barbers and their customers are entitled to the equal protection of the laws. The claim that the work of the barber is one of necessity, needful during the early hours of Sunday for the comfort of the community, rests upon years of practical construction of the various laws regulating the observance of the Sabbath. I think that chapter 823, Laws 1895, is void, as violating the fourteenth amendment of the constitution of the United States, and for the further reason that it is not a proper exercise of the police power.

The judgment appealed from should be reversed.

All concur with VANN, J., for affirmance, except GRAY, and BARTLETT, JJ., who dissent, each reading for reversal, and HAIGHT, J., who concurs in both dissenting opinions.

Judgment affirmed.