THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BENJAMIN
HAWKER, Appellant.

*Provisions of the Public Health Law, that one convicted of a felony shall not there-
after practice medicine — they are constitutional as to subsequent, but not as to
prior, convictions.*

The provisions of section 153 of the Public Health Law (Chap. 661, Laws of
1893, as amended by chap. 398, Laws of 1895), enacting, among other things,
that any person who, after conviction of a felony, shall attempt to practice
medicine, or shall so practice, shall be guilty of a misdemeanor, constitute a
lawful exercise of the police powers of the State, in so far as they operate pro-
spectively upon persons convicted of felony after the passage of the acts.

They are unconstitutional in so far as they apply, by their terms, to persons so
convicted before the law went into operation, as it is not within the power of
the Legislature to deprive a class of persons, otherwise lawfully engaged in
the exercise of a right, of that right because of past occurrences, many of
which may be in no wise associated with their professional pursuits.

As to the latter class, the provisions conflict with subdivision 1 of section 10 of
the Constitution of the United States, forbidding the States to pass any *ex post
facto* law, or one in the nature of a bill of attainder, or of pains and penalties.

INGRAHAM, J., dissented.

APPEAL by the defendant, Benjamin Hawker, from a judgment
of the Court of General Sessions of the Peace in and for the city
and county of New York in favor of the plaintiff, rendered on the
17th day of September, 1896, convicting him of a misdemeanor, and
also from a judgment of said court rendered on the 23d day of July,
1896, overruling his demurrer to the indictment.

*Hugh O. Pentecost*, for the appellant.

*Robert C. Taylor*, for the respondent.

PATTERSON, J. :

The appellant was indicted in the Court of General Sessions of
the Peace for a misdemeanor, charged to have been committed by
violating that provision of section 153 of the Public Health Law
(Chap. 661, Laws of 1893, as amended by chap. 398, Laws of 1895)
which enacts, among other things, that any person who, after con-
viction of a felony, shall attempt to practice medicine or shall so
practice, shall be guilty of a misdemeanor. It is alleged in the

indictment that. the appellant was convicted in March, 1878, of a felony, and was sentenced to a term of imprisonment, notwithstanding which, and contrary to the act of 1893, as amended in 1895, he did practice medicine at the city of New York on the 22d day of February, 1896. A demurrer was interposed to the indictment on the ground that the provision of the statute sought to be enforced against the prisoner is unconstitutional. The demurrer was overruled. On his arraignment for trial the defendant admitted on the record that all the facts set forth in the indictment were true, whereupon he was found guilty and sentence was imposed, but its execution was suspended and a certificate of reasonable doubt was given, in order that the question of law involved might be passed upon by the appellate courts. That question is now brought up by appeal from the judgment, and from the order overruling the demurrer, and, stated in its simplest form, it is whether the legislation of 1893 and 1895, in so far as it relates to convictions had prior to that statute taking effect, is a lawful exercise of the police power of the State, or is an *ex post facto* law, or one in the nature of a bill of attainder or a bill of pains and penalties, and thus included in the powers, the exercise of which is forbidden to the several States of the Union by subdivision 1 of section 10 of article 1 of the Constitution of the United States.

It is not, and in reason cannot be denied, that that function of government called the police power of the State extends to the regulation, control and supervision of all matters relating to the public health, or that legislation upon such subjects is entirely within the jurisdiction of the several States. As affecting public health each State has the absolute right to make such appropriate and constitutional laws as it may deem proper relating to the conditions upon which any person will be allowed to practice medicine or surgery within its territorial limits. That power is not confined merely to dictating conditions or requiring qualifications applicable to the acquisition of an original right or permission to practice, but it includes also the authority to prescribe new conditions as the necessity for them may arise, upon which one practicing the healing art may continue in the pursuit of his profession. As is said in *Dent* v. *West Virginia* (129 U. S. 114), the same reasons that control in imposing conditions, upon compliance with which the physi-

cian is allowed to practice in the first instance, may call for further conditions as a requirement of his continuance in practice. All legislation exclusively directed to the accomplishment of that object comes within the police power of the State. Therefore, in its operation upon those convicted of felony after its passage, the provision of the Public Health Law now under consideration is constitutional and valid, for it declares in advance that whosoever shall thereafter be convicted of a felony shall not be allowed to continue in the practice of medicine, and the additional punishment for crime is announced before the crime is committed. But, with respect to those who had acquired the right to practice and may have been convicted before the act of 1893, the question is presented in an entirely different aspect. As was said by Mr. Justice McLEAN in *The Alien Passenger Cases* (7 How. [U. S.] 408): "The police power of the State cannot draw within its jurisdiction objects which lie beyond it." "In guarding the safety, the health and morals of its citizens, a State is restricted to appropriate and constitutional means." Assuming for the purposes of the argument that the Legislature may require, for the continuance in the practice of medicine, that the practitioner shall possess professional knowledge and skill and also good moral character, it is obvious that such requirement must relate to a present status or condition of a person coming within the terms of the act. The law under which this appellant was indicted does not deal with his present moral character. It seizes upon a past offense and makes that, and that alone, the substantial ingredient of a new crime, and the conviction of it years ago the conclusive evidence of that new crime. It will be observed that this statute includes any and all felonies, not only those committed in connection with the profession of medicine and surgery, but any and every felony in the whole catalogue of crime, whether committed here or in another jurisdiction. Its design is to deprive convicted felons of the right of practicing at all. Clearly, it acts directly upon and enhances the punishment of the antecedently committed offense by depriving the person of his property and right, and preventing his earning his livelihood in his profession only because of his past, and in this case expiated, offense against the criminal law. This prisoner has committed no new crime except that which the statute has created out of the old one. He had absolutely the right to

practice medicine the day before that statute was passed. His former conviction entailed the punishment of imprisonment and disfranchisement as a voter, but it did not take away from him his property in the right to earn his living on the expiration of his imprisonment by engaging in the profession of which he was and is a member. His civil rights were not extinguished, but only suspended, during his imprisonment. (2 R. S. 701, § 19; Penal Code, § 710.) That his right to so engage in that profession is in the nature of a property right cannot be disputed. It is not a mere revocable license. As is said in the *Dent* case (*supra*), in this country "all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, *that is, the right to continue their prosecution,* is often of great value to the possessors *and cannot be arbitrarily taken from them any more than their real or personal property can be thus taken.*" That means that if it is taken away it must be for cause. It was held in that case that there is no arbitrary taking away of the right where its exercise is not permitted for failure to comply with conditions imposed by the State for the protection and welfare of the people, and hence a law requiring practitioners of medicine under certain circumstances to procure evidence of their fitness to continue in practice was a valid exercise of legislative power, and a conviction for practicing without such evidence was sustained. The authority of the *Dent* case (*supra*) is invoked here as being conclusive upon the validity of the law under which this appellant was indicted, but the distinction between that case and this is broad and striking. No question arose there of the construction of a new crime out of an old one, nor the taking away by legislation of a right because of the previous commission of an offense. It was the mere regulation of the right. All that the statute of West Virginia required related to physicians habitually practicing in that State furnishing themselves with evidence of their qualifications to continue in the pursuit of a calling and making it a misdemeanor to practice without that evidence. The court was very careful to point out the difference between it and that other class of cases in which laws were " designed to deprive parties of their right to continue in their professions for past acts." In the

*Dent* case the statute applied to every person, without exception, practicing in the State of West Virginia, and related directly to fixing a then present status as to the qualifications of every physician in the State. Conceding, but not deciding, that the Legislature may require as a condition for continuing in the practice of medicine that every practitioner shall be possessed of, and continue to have, a good moral character, that requirement would refer to some present qualification to be ascertained by conditions existing at the time the enforcement of the requirement was sought. Conviction of a felony certainly raises a presumption of bad character, but it is not an irrebutable presumption that a man convicted of an infamous crime, " treason, felony or the *crimen falsi*," ten or twenty or fifty years ago is to-day absolutely an immoral person, unfit to practice any profession. There is no such conclusive presumption. Even as to the competency of witnesses, the old rule of disqualification of convicts is completely done away with in the State of New York. (Code Civ. Proc. § 832.) The provision of the statute we are now considering does not take hold of an existing condition of moral character. That may be never so good, and yet the new crime exists, arising exclusively out of a past transgression. It is said that the Legislature has only made the former conviction evidence of a disqualification which it had the power to impose, but that is not so. It makes the prior conviction, which is but the establishment by adjudication that a crime was committed, the very essence of the newly-created crime. The design of the act is, therefore, fully apparent. No matter how praiseworthy the motive may be, it is meant to deprive one class of persons, otherwise lawfully engaged in the exercise of a right, of that right because of past occurrences, "many of which are in nowise associated with their professional pursuits," for this act strikes at the unfortunate man who in his youth may have violated the law, and, without real evil intent, have committed and been convicted of any felony and pardoned the very day of his conviction, as well as the hardened criminal, guilty of as foul an offense as that of which this appellant was convicted. The underlying purpose of the act may be to purge the medical profession of members unworthy of confidence, but the real effect is to accomplish that by inflicting an additional punishment through a newly-created offense inseparably connected with the anterior crime,

and thus bring about a result the Constitution forbids, no matter in what form the statute is drawn. The distinction between the two classes of cases runs through the leading authorities on the subject. It is plainly pointed out in the *Garland Case* (4 Wall. 333). In the opinion of the court in that case it is declared that "exclusion from any of the professions or any of the ordinary avocations of life *for past conduct* can be regarded in no other light than as punishment for such conduct," and it was held that laws of that character come within the constitutional inhibition. Not only is this defendant punished by exclusion from his profession, but he is to suffer fine and imprisonment also. That fine and imprisonment may be said to be punishment for violating the new law, but the exclusion from the profession under pains and penalties for continuing in its practice is only because of the previous crime, and hence additional punishment for that crime. The chief arguments to be urged in favor of the constitutionality of this law are very powerfully advanced by Mr. Justice MILLER in the minority opinion in the *Garland* case, and they are to a great extent the same general considerations relied upon by the People in the case at bar. And so in the Utah election cases (*Murphy* v. *Ramsey*, and four other cases, 114 U. S. 15) the question related to the validity of an act of the Congress operating the disfranchisement of voters in the Territory of Utah who were bigamists and polygamists. The act was declared constitutional because it operated upon the present status of voters then having a plurality of wives. The disfranchisement was not because the person had committed bigamy or polygamy, but because he persisted in crime by continuing in the criminal or forbidden relation in violation of a statute. No additional punishment was added to a past crime. In the case at bar, as before remarked, the real substance of the present misdemeanor is created from the past offense.

Our conclusions, therefore, are: *First.* That the provision we have considered of the Public Health Law *is constitutional* so far as it operates prospectively and upon persons convicted of felony after its passage. *Second.* That it *is unconstitutional* in so far as it applies by its terms to persons so convicted before the law went into operation.

The judgment and order appealed from must be reversed; the indictment dismissed, and the appellant discharged.

VAN BRUNT, P. J., WILLIAMS and O'BRIEN, JJ., concurred; INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting):

I cannot agree with Mr. Justice PATTERSON. The question as he states it is whether the provision of section 153 of the Public Health Law (Chap. 661, Laws of 1893), in so far as it relates to convictions had prior to that statute taking effect, is a lawful exercise of the police power of the State, or is an *ex post facto* law or one in the nature of a bill of attainder or a bill of pains and penalties, and thus included in the powers, the exercise of which is forbidden to the several States of the Union by subdivision 1 of section 10 of article 1 of the Constitution of the United States. It is not pointed out in the prevailing opinion whether the provision in question is an *ex post facto* law or one in the nature of a bill of attainder or a bill of pains and penalties; but in the opinion the act is assumed to be valid unless it is in violation of this provision of the Federal Constitution. It is now too late to question the right of the State to make the regulations necessary for the preservation of the public health; and although the exercise of that power must necessarily involve some restraint in the liberty of the individual or in his right to pursue a particular avocation, dependent upon the condition of affairs at the time of the exercise of the power, still where the court can see that the methods adopted have a reasonable connection with the preservation of the public health, I do not understand that they are necessarily *ex post facto* because rights of the individual that existed prior to the passage of the law that creates the restriction are curtailed. I suppose that if an act was passed requiring that those having a contagious or infectious disease should be isolated so as to avoid communicating the disease, the fact that such disease existed prior to the time of the passage of the act would not make the act *ex post facto,* and so unconstitutional, nor would such isolation or control over a person who has such a disease be a punishment for having the disease; and so as to the power of the State to regulate the practice of those professions that have to do with the public health, and to determine who shall practice such professions within the

State, and what qualifications they shall possess, has been recognized as being within this power of the State by a long series of legislative acts, and by the decisions of the highest courts of this State and of the United States. That question was directly presented to the Supreme Court of the United States in the case of *Dent* v. *West Virginia* (129 U. S. 114). It was there expressly held that an act of the Legislature of the State of West Virginia prohibiting a person from practicing medicine unless such person had a degree of a recognized medical college, had passed an examination, or had practiced medicine in the State for at least ten years prior to the passage of the act, was a valid exercise of this power by the State; and the conviction of a person who had practiced but five years prior to the passage of the act was upheld. The Legislature had provided a test which would regulate the practice of all those who in the future should practice medicine within the State, and prohibiting those who had not the required qualifications from practicing. That prohibition applied to one who had practiced for five years prior to the passage of the act and who was practicing at the time of its passage. The number of years in practice was the test there prescribed. It was a purely arbitrary one fixed by the Legislature, and yet it was upheld as a valid exercise of this power. Once concede that the Legislature had the power to prescribe the qualifications and the method by which those qualifications could be ascertained, it is difficult to see how the courts can interfere so long as the test prescribed has a relation to the qualifications required. It must also, I think, be conceded that, considering the relation that exists between a physician and his patient, and the acts that he is often required to do, which may or may not be criminal, depending upon the *bona fide* belief of the physician that they are necessary for the protection of the life and health of the patient, the character of the physician is an important element in determining whether he possesses the necessary qualifications for the practice of his profession. The question, it seems to me, is whether the provisions of the statute which require that certain qualifications are required before an individual be allowed to practice the profession of medicine, and the test adopted to ascertain whether a physician assuming to practice has such qualifications, are under the circumstances reasonable. By the Public Health Law (Chap. 661, Laws of 1893) the State has

attempted to prescribe general rules for the protection of the public health. This act provides for a State Board of Health and for local boards; prohibits the adulteration of food, drugs and medicine; relates to contagious and infectious diseases, their suppression and treatment; regulates the practice of medicine and dentistry and subjects relating thereto. By article 8, the practice of medicine in the State of New York is regulated, and by section 140 of the act the qualifications of those practicing medicine within the State are prescribed. It is there provided that no person shall practice medicine after September 1, 1891, unless previously registered and legally authorized. "Nor shall any person practice medicine who has ever been convicted of a felony by any court, or whose authority to practice is suspended or revoked by the regents on recommendation of a State board." Provision is then made for the examination of candidates to practice medicine and the qualifications that must be shown before a license to practice is granted. Then, by section 153 of the act, as amended by chapter 398 of 1895, it is provided that "Any person who, * * * after conviction of a felony, shall attempt to practice medicine, or shall so practice, * * * shall be guilty of a misdemeanor;" and it was for a violation of this section that the defendant was convicted. It appeared on the trial that this defendant had been convicted in the year 1878 of the crime of abortion. So, when this act took effect, he was not a person qualified to practice medicine under section 140, and by so practicing after the 1st of September, 1891, he was guilty of a violation of the act. He was convicted of practicing medicine in the city and county of New York in February, 1896. The act, therefore, did not make him guilty of an offense committed before the passage of the act. It was the act of practicing medicine when he was not, under the provisions of section 140 of the statute referred to, qualified to practice within this State that constituted the offense. The only question is whether the Legislature had the power to require, as one of the qualifications of a physician, that he should be a man of good moral character, and that the fact that he had been convicted of a felony should be conclusive that he was not of such a character as would justify his being allowed to practice. If it is conceded that the Legislature had the power to prescribe qualifications for those in practice at the time of the passage of the act,

which would exclude some who were then practicing, and that a man of bad character should not be allowed to practice, upon what principle can it be said that it was beyond the power of the Legislature to declare that a conviction of a felony should be evidence of the lack of the necessary qualifications to entitle the person convicted to be allowed to practice? In *Dent* v. *West Virginia* (*supra*) the fact that a physician had practiced ten years prior to the passage of the act was evidence that he had the qualifications required, while the practice of nine years was not such evidence. Here the Legislature has said that the fact that a person has been convicted of a felony shall prohibit him from practicing, not as an additional punishment, or as any punishment for the offense for which he had been convicted, but as a test of his qualification. Was not the physician who had practiced five years in the case of *Dent* v. *West Virginia* (*supra*) as much punished because of the fact that he had practiced less than ten years, as was the defendant in this case punished because he had, prior to the time of the passage of the act, been convicted of a felony? In both cases the Legislature had prohibited the defendant from practicing, and had provided that in case he should violate the provisions of the law and practice without the qualifications prescribed, he should be guilty of a crime. The Legislature having, concededly, the power to determine what should be the qualifications, and what tests should be applied to determine whether such qualifications existed, I cannot see how the court can say that a test which provides that a ten years' practice is evidence of such qualification is valid, but that a test which provides that a conviction of a felony shows that the necessary qualifications did not exist is void. An examination of this whole act shows that it relates solely to the regulation of the public health, and not to the punishment of any one for any offense, except for a violation of its provisions subsequent to the passage of the act; and when this defendant, in the face of this prohibition of the statute, practiced medicine within this State, he was guilty of a crime, unless the prior conviction of a felony had no reasonable connection with the qualification, mental or moral, of those who should practice medicine.

The extremely interesting discussion of the question as to what is an *ex post facto* law in the case of *Cummings* v. *State of Missouri*

(4 Wall. 277), and *Ex parte Garland* (Id. 334), does not seem to me to be applicable here.

In *Ex parte Garland*, Mr. Justice FIELD, in delivering the opinion of the court (at p. 379), says: "The Legislature may undoubtedly prescribe qualifications for the office, to which he must conform, as it may, where it has exclusive jurisdiction, prescribe qualifications for the pursuit of any of the ordinary avocations of life. The question in this case is not as to the power of Congress to prescribe qualifications, but whether that power has been exercised as a means for the infliction of punishment, against the prohibition of the Constitution." Applying this test, an examination of the act conclusively shows that this power has not been used here as a means for the infliction of punishment at all, but solely to prescribe the qualifications of a person practicing medicine within this State. The Constitution of the State of Missouri in *Cummings* v. *State of Missouri* (*supra*) and the act of the United States in *Ex parte Garland* (*supra*) were both held to be intended to inflict penalties for acts committed prior to the adoption of the Constitution in one case and the passage of the act of Congress in the other; and thus were held to be *ex post facto* laws and within the prohibition of the Constitution. Mr. Justice FIELD, who delivered the opinion of the court in the *Cummings* and *Garland* cases, speaking for the court in the case of *Dent* v. *West Virginia* (*supra*), says of the first-named cases: "The Constitution of Missouri and the act of Congress in question in those cases were designed to deprive parties of their right to continue in their professions for past acts or past expressions of desires and sympathies, many of which had no bearing upon their fitness to continue in their professions. The law of West Virginia was intended to secure such skill and learning in the profession of medicine that the community might trust with confidence those receiving a license under authority of the State." It seems to me that this applies to the case at bar.

Attention is called in the prevailing opinion to the fact that "this act strikes at the unfortunate man who, in his youth, may have violated the law, and without real evil intent have committed and been convicted of any felony and pardoned the very day of his conviction, as well as the hardened criminal, guilty of as foul an offense as that of which this appellant was convicted." This suggestion is only attack-

ing the propriety of the test which the Legislature has established to determine whether or not the moral qualifications exist, and it might as well be said that the test provided for in *Dent* v. *West Virginia* (*supra*) was not a perfect test, because a practice of five years in a large city would better qualify a person for the practice of medicine. than a ten years' practice in a country district. It was for the Legislature to establish the test, and as long as it had a reasonable connection with the object sought to be attained, that is, the qualification of the physician, its discretion is not subject to review. It certainly seems to me to be a not unreasonable test of the moral qualification of a man who is to be admitted to the intimate relation that must exist between a patient and a physician, that it should not appear by his past life that he had been guilty of a serious crime. As was stated by the Court of Appeals in the case of *People* v. *Havnor* (149 N. Y. 201), "When thus exercised, even if the effect is to interfere to some extent with the use of property, or the prosecution of a lawful pursuit, it is not regarded as an appropriation of property or an encroachment upon liberty, because the preservation of order and the promotion of the general welfare, so essential to organized society, of necessity involve some sacrifice of natural rights."

I think the Legislature had the power to say that a person who had been convicted of a felony did not have the necessary qualifications to practice medicine within this State, and that, therefore, the judgment should be affirmed.

Judgment and order reversed, indictment dismissed, and appellant discharged.