(68 App. Div. 370.)

### CITY OF NEW YORK v. HERDJE.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

1. TENEMENTS—ERECTION—TIME WHEN COMMENCED—REGULATION—EVIDENCE —SUFFICIENCY.

On an issue whether defendant had actually commenced work on his tenement house before the taking effect of the tenement house act (Laws 1901, c. 334), on April 12, 1901, so as not to be subject to its provisions, a building inspector testified that he examined the premises April 13th, and saw no signs of work; that he had passed by them every other day; that on May 28th he saw excavating being done; that the contractor said he began May 27th. Defendant testified that he set two men to digging holes on April 12th, and a third person testified that he contracted to build the building for defendant before that time, and told him to get the two men, and that defendant did so. On cross-examination he testified that the cellar diggers "commenced actually digging" about the middle of May. *Held* to sustain a finding that work was not commenced until after the act took effect.

2. SAME—TENEMENT HOUSE ACT—CONSTRUCTION.

Tenement House Act, § 4 (Laws 1901, c. 334), providing that "a tenement house not now completed. but on which work has been actually commenced after approval of plans therefor, * * * shall be subject

only to the provisions of this act affecting now existing tenement houses," does not free a builder from the provisions of the act as to tenement houses thereafter erected, where, though his plans had been approved, work was not actually begun at the time of its passage.

**8. SAME—REPEAL—EFFECT.**

Under Laws 1892, c. 677, § 31, providing that the repeal of a statute shall not affect any liability incurred prior to the time of such repeal, whatever liability is incurred by a person brought within Tenement House Act, § 4 (Laws 1901, c. 334), by failing to commence actual work prior to its taking effect, is not affected by the subsequent repeal of such section by Laws 1901, c. 555.

**4. CONSTITUTIONAL LAW—VESTED RIGHTS—IMPAIRMENT—POLICE POWER.**

The fact that defendant had received a permit for the construction of his tenement house before the taking effect of the tenement house act (Laws 1901, c. 334), regulating their erection, did not relieve him from liability to its provisions on the ground that his inchoate right to build had become absolute; the act being a valid exercise of police power.

**5. SAME—OBLIGATION OF CONTRACTS.**

The fact that defendant had entered into a contract for the construction of his tenement house before the taking effect of the tenement house act (Laws 1901, c. 334), regulating their erection, did not relieve him from liability to its provisions, on the ground that the act impaired the obligation of his contract; it being a valid exercise of police power.

**6. SAME—POLICE POWER—UNREASONABLE EXERCISE.**

The tenement house act (Laws 1901, c. 334), regulating the erection of tenement houses, and declaring in section 4, as amended by Laws 1901, c. 555, that tenement houses not completed, but the excavation of which shall have been commenced by a certain date, shall be subject only to the provisions of the act affecting now existing tenement houses, provided that the plans for said house were filed on or before April 10, 1901, was not unreasonable, in fixing said date as the date up to which plans could be filed, instead of April 12th, the time of taking effect of the act.

Appeal from special term, Kings county.

Suit by the city of New York against George Herdje to restrain the defendant from proceeding with the erection of certain buildings. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

J. Charles Weschler, for appellant.

P. E. Callahan, for respondent.

JENKS, J. An inspector of buildings testified that on April 13, 1901, he went to the premises and examined them thoroughly, without seeing any signs of work begun, by excavation or otherwise. He further testifies that he passed by the premises every other day; that on May 28, 1901, he saw excavation work doing; and that the contractor told him that he had begun work on May 27, 1901. On the other hand, the defendant testifies that he began work at about 11:30 a. m. of April 12, 1901,—the day the permit was granted,—by causing two laborers whom he had "picked up" in the street to dig holes in each lot. Doenecke testifies that he entered into a contract with the defendant before 12 m. of April 12, 1901; that he told the defendant to get two men to go to work, whereupon the defendant hired two men on the street, who began to dig on the premises before 12 m.; and that he (Doenecke) stayed there

about 15 minutes.   On cross-examination he testified that his cellar
digger "commenced actually digging" there after the middle of May,
—not the 28th of May.   The learned referee found that no work
was actually begun upon the construction of the proposed build-
ings on the premises, after the approval of the plans and the grant
of the permit, before the enactment of chapter 334, Laws 1901, or,
in other words, before April 12, 1901.   See said statute, and par-
ticularly section 165 thereof.   There is no such preponderance of
evidence as would justify a conclusion, with reasonable certainty,
that the finding was erroneous, and therefore it should not be dis-
turbed.   Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588; D. G.
Burton Co. v. Cowan, 80 Hun, 392, 30 N. Y. Supp. 317, affirmed
on opinion below in 150 N. Y. 583, 44 N. E. 1123; Shute v. Jones,
78 Hun, 99, 28 N. Y. Supp. 1072; Slattery v. Haskin, 3 App. Div.
48, 37 N. Y. Supp. 1061.
    Section 4 of said statute reads:

"A tenement house not now completed, but upon which work has been
actually commenced after approval of plans therefor by the department of
buildings, shall be subject only to the provisions of this act affecting now
existing tenement houses."

    I think that the section does not free the defendant from the
provisions of the act of 1901, for the reason that, although plans
had been approved, yet work thereon had not been actually com-
menced at the time of the passage of the act, namely, April 12,
1901.   On April 25, 1901, this section was amended by chapter 555
of the Laws of 1901 so as to read as follows:

"Buildings in Process of Erection.   A tenement house not now completed,
but the excavation for which shall have been commenced in good faith on
or before the first day of June, nineteen hundred and one, after approval of
the plans therefor by the department of buildings, and the first tier of beams
of which shall have been set on or before the first day of August, nineteen
hundred and one, shall be subject only to the provisions of this act affecting
now existing tenement houses: provided that the plans for said house were
filed in said department on or before the tenth day of April, nineteen hundred
and one, and were in accordance with the laws in force at the time of filing,
and that the building is built in accordance with such laws."

    It appears that on the said 25th day of April the notice of revoca-
tion of the permit was sent to the defendant.   The learned counsel for
the appellant contends that inasmuch as the ground alleged for the
revocation was not that the plans for said house were not filed on
or before the 10th day of April, but that no work had been actually
commenced at the time of the passage of the act, the ground as-
signed for the revocation of the plans was a provision of law which
did not exist at the time of the revocation.   He points out that
the complaint made in July, 1901, asked for relief for noncompliance
with the unamended section 4, and that the conclusion of the learned
referee was based upon a violation of the said unamended section.
But I am of opinion that, if the defendant incurred any liability
pursuant to the unamended section, that was not affected by the
subsequent repeal thereof.   Section 31, c. 677, Laws 1892, reads:

"The repeal hereafter or by this chapter of any provision of a statute,
which repeals any provision of a prior statute, does not revive such prior

provision. The repeal hereafter or by this chapter of any provision of a statute which amends a provision of a prior statute, leaves such prior provision in force unless the amendatory statute be a substantial re-enactment of the statute amended. The repeal of a statute or part thereof shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected; and all actions and proceedings, civil or criminal, commenced under or by virtue of any provision of a statute so repealed, and pending immediately prior to the taking effect of such repeal, may be prosecuted and defended to final effect in the same manner as they might if such provisions were not so repealed."

In McCann v. City of New York, 52 App. Div. 358, 65 N. Y. Supp. 308, affirmed in 166 N. Y. 587, 59 N. E. 1125, the court held that the foregoing section, while not attempting to interfere with future legislation, prescribed a rule of construction applicable when not inconsistent with a general object of a subsequent statute, or the context of the language construed, or other provisions of the repealing law indicating a different intent. I think that the principle of that decision applies to this proceeding. In reaching this conclusion I am not embarrassed by the complications that the question arises upon a penal statute, or by the consideration that the amendment of the said section 4 restores any right to the defendant, inasmuch as the proviso excludes the defendant because his plans were filed neither on nor·before the 10th day of April, 1901, but subsequent thereto, namely, on April 12, 1901.

The learned counsel for the appellant contends that inasmuch as a permit had been granted in accordance with laws actually in force, and the defendant testifies that on the morning of April 12, 1901, he had made a contract with one Doenecke to build upon the land, his inchoate right to build became an absolute property right, and that the law passed destroyed this right, impaired the obligation of the contract, and is therefore unconstitutional. The answer to this is that the legislation in question is an exercise of the police power. In Re Paul, 94 N. Y. 497, the court, per Finch, J., said that tenement houses, as a known and distinct class, are recognized and defined by law; that they are apt to be ill ventilated, unclean, and packed full of inmates, and to become centers or radiating points of contagious disease; and that as such they might be the proper subjects of sanitary regulation, in the interests of the public health. In Re Jacobs, 98 N. Y. 112, 50 Am. Rep. 645, the court, in discussing the question up, say, per Earl, J.:

"We will once more recur to the law under consideration. It does not deal with tenement houses as such; it does not regulate the number of persons who may live in any one of them, or be crowded into one room; nor does it deal with the mode of their construction, for the purpose of securing the health and safety of their occupants or of the public generally."

This is significant as a statement of what would be a fair exercise of the police power. In People v. D'Oench, 111 N. Y. 359, 18 N. E. 862, the court said that it had no doubt of the competency of the legislature, in the exercise of the police power, to pass an

act regulating the height of all dwelling houses, and of all houses used or intended to be used as dwellings for more than one family. See, too, Health Department of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 39 N. E. 833, 45 Am. St. Rep. 579. In People v. Havnor, 149 N. Y. 195, 199, 43 N. E. 541, 542, 31 L. R. A. 689, 691, 52 Am. St. Rep. 707, 709, Vann, J., speaking for the court says:

"The sanction for these apparent trespasses upon private rights is found in the principle that every man's liberty and property is to some extent subject to the general welfare, as each person's interest is presumed to be promoted by that which promotes the interest of all. Dependent upon this principle is the great police power, so universally recognized, but so difficult to define, which guards the health, the welfare, and the safety of the public."

I think that such legislation was in the exercise of the police power, in the interest of the public health, morals, and safety, as involved in the use of property for which the owners exact compensation, and that therefore neither the fact that the defendant had received a permit, nor that he had made a contract, for the construction of the building, relieved him from this exercise of an act of sovereignty. Buffalo E. S. R. Co. v. Buffalo St. R. Co., 111 N. Y. 132, 133, 19 N. E. 63, and cases cited; People v. Squire, 107 N. Y. 605, 14 N. E. 820, 1 Am. St. Rep. 893; Health Department of City of New York v. Rector, etc., of Trinity Church, supra.

The learned counsel for the appellant further contends that the "arbitrary selection" of April 10, 1901, as a day prior to which plans must have been filed, instead of April 12th, the day that the act went into effect, was an unreasonable exercise of the police power. If the defendant at that time, after approval of his plans, had actually commenced work, then he was within the category of the then existing tenement houses, so far as the provisions of the act of 1901 were concerned. This would have been his status until the amendment of April 25, 1901. This amendment would still, in the like degree, have excluded the defendant from the purview of the statute, if he had actually commenced work, and could make certain progress thereon, after approval of his plans, provided approval had been given before April 10th. But I fail to see what standing the defendant has to raise this question upon the amendment. There is a finding that the defendant had not actually commenced work before the passage of chapter 334 of the Laws of 1901, and that therefore he was not within the exception of section 4, as originally enacted. True, he might have brought himself within the section as amended if that section provided that his plans might have been filed on or before April 12th. His complaint then, really, is not that the amendment deprived him of any rights assured by section 4 as amended, but that the exception assured by the amendment is not broad enough to include him. I fail to see anything unreasonable in the action of the legislature fixing April 10th instead of April 12th as a day up to which the filing of plans, followed by work, might save the owner from the full purview of the new law. The filing of plans is, of course, the preliminary step in construction; and yet the legislature has brought the very initiation of construc-

tion to within two days of the enactment of the law, so as to save those who have taken but this initiative step.

The judgment should be affirmed, with costs.   All concur.