(114 App. Div. 816)

## CZERMAK et al. v. WETZEL et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1906.)

1. FRAUDS, STATUTE OF—LANDLORD AND TENANT—AGREEMENT FOR LEASE—RESCISSION.

Where defendants orally agreed to lease certain lodge rooms in a building in process of construction to plaintiffs for 10 years, with an unlimited right to assign and sublet, defendant was entitled to recede from such oral agreement at any time before plaintiffs took possession of the property.

2. SAME—EFFECT OF GIVING POSSESSION.

Where prior to plaintiffs taking possession of a hall they knew that defendants had received from an alleged prior oral agreement to give an unrestricted lease for a period of ten years, and that defendants would then only give a restricted lease for five years, plaintiffs could not enforce specific performance of such alleged oral agreement on the theory that it had been partially performed.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, § 290.]

Jenks and Hooker, JJ., dissenting.

Appeal from Special Term, Westchester County.

Suit by Louis Czermak and others, as trustees of the Knights of Pythias, against Charles A. Wetzel and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Burton C. Meighan, for appellants.
Jerome A. Peck, for respondents.

GAYNOR, J.   The controlling fact is not disputed; it is proved by
the plaintiffs as well as by the defendants, and contradicted by no wit-
ness.

In November, 1902, the representatives of the plaintiffs made an oral
arrangement with one of the defendants for the leasing of lodge rooms
in a building which the defendants starting to construct, to the
lodge of the Knights of Pythias of which the plaintiffs are the trustees.
The complaint says such oral agreement was for a lease for 10 years
from February 1st, 1903, with unlimited right to assign and sublet.
The answer says it was for 5 years, with no right to assign or sublet,
except to a sister lodge of the same order, i. e., a lodge of sisters of
the Knights of Pythias, as the evidence explains it.

Now the undisputed fact is that the defendants denied from the be-
ginning that the oral agreement was for a 10 years restricted lease.
The parties met several times between the first conversation in Novem-
ber and the day the plaintiffs moved in, April 16th, 1903, and this was
the dispute every time, and the defendants refused to yield their under-
standing of what the oral arrangement was.   The plaintiffs even em-
ployed a lawyer to demand a 10 years lease, but the defendants still
stood their ground, and refused.

In this situation, i. e., being positively told, as they themselves prove,
that they could only have a five  years lease, with a restriction against
assigning or subletting, the plaintiffs moved in.   This was not a mov-
ing in under an oral agreement for a 10 years lease.

They afterwards papered the walls at a cost of $65, carpeted at a
cost of $197.75, put nosings on the platform at a cost of $21.50, paid
$146.05 for labor and materials, which are not described at all, and
$56.50 for settees, a total of $486.80.

Now they bring this suit for specific performance of the alleged oral
agreement for a 10 years lease on the ground that the said expenditures
were made under the faith of the said oral agreement, and that that
gives equity jurisdiction under the head of part performance and the
prevention of fraud.

But concededly there was no such oral agreement when the plaintiffs
moved in.   On the contrary, the parties were in dispute as to what the
lease should be.   It matters not whether the defendants said in Novem-
ber (which they deny) that they would give a 10 years lease or not.
If they did, they had the right to recede from it before the plaintiffs
moved in, and say they would only give a 5 years lease, for the oral
agreement was void; and without dispute they did say they would not
give a 10 years lease, but only a 5 years lease, and stuck to it.

The court could not base a finding of an agreement on the said first
conversation or conversations, for concededly the defendants had a
right to recede therefrom, and did so, if it be assumed that the plain-
tiffs' version therof, and not the defendants', is the true one, and that
therefore such an agreement was originally made.   The finding of fact
that the plaintiffs went into possession under the agreement alleged in

the complaint is wholly unsupported, and falls, and the judgment must fall for lack of its support.

Moreover, the fitting up done by the plaintiffs will not be lost to them under a five years' lease, and the element of fraud, which gives jurisdiction to equity in cases of part performance, is therefore lacking. The work they did does not usually last for more than five years, and it does not appear that they would encounter any loss thereof by taking a 5 years lease.

After the plaintiffs moved in the dispute was continued, and there is evidence of the interviews had, which it is claimed goes to show by admissions what the original arrangement in November was. But this does not disturb the fact that whatever the November arrangement was, whatever was said then, the defendants immediately thereafter, and all the time up to the moving in, asserted that they would not give a 10 years lease, and that hence the moving in was not under an oral promise of a 10 years lease.

Finally, there is no evidence that the defendants ever agreed to let without restrictions in respect of assigning or sub-letting.

The judgment should be reversed.

RICH and MILLER, JJ., concur. JENKS and HOOKER, JJ., dissent.

JENKS, J. I dissent. The plaintiffs assert that the defendants verbally agreed to execute a lease of premises for 10 years at $250 a year, without restriction for subletting. The defendants assert that the agreement was for five years, with a restriction for limited subletting. The court has decided for the plaintiffs, and decreed a specific performance. The agreement was made in November, 1903. In December, 1902, the plaintiffs paid a deposit of $25 to secure the rooms. Completion of the building was delayed by labor troubles, but in March, 1903, the plaintiffs took possession of the premises. Such occupancy has continued, and the rental has been paid monthly. After possession the plaintiffs papered the rooms, made closets, did work upon platforms, laid a carpet, made, cut, and fitted to the rooms, and otherwise prepared the premises for its purposes at an outlay of $600 or $700. There is no dispute that there was a contract, and the court has decided that it called for a lease as to the terms asserted by the plaintiffs. I think that the evidence justifies the decision, and that it is beyond our interference, so far as the facts are concerned, under the rule of Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588; Foster v. Bookwalter, 152 N. Y. 166, 46 N. E. 299; City of New York v. Herdje, 68 App. Div. 370, 74 N. Y. Supp. 104, and like cases. Possession under the circumstances indicates the requisite intention of the plaintiffs to perform a contract (Pomeroy's Contracts, Specific Performance [2d Ed.] § 116), and in consequence of the finding of the court now confirmed *the* contract. I think that such possession is such part performance as to eliminate the defendants' plea of the Statute of Frauds. Pomeroy, supra (section 115) says:

"Possession alone of land, under a verbal contract, when delivered to the vendee or lessee, or taken by him with the consent of the vendor or lessor,

or with the knowledge which implies such consent, is an act of part performance which takes the case out of the statute of frauds, even without the additional circumstances of the payment of consideration or the making of improvements."

Story in his Equity Jurisprudence (pages 76, 77, 79, 80, vol. 2) says:

"But a more general ground, and that which ought to be the governing rule in cases of this sort, is that nothing is to be considered as a part performance which does not put the party into a situation which is a fraud upon him, unless the agreement is fully performed. Thus, for instance, if upon a parol agreement a man is admitted into possession, he is made a trespasser, and is liable to answer as a trespasser, if there be no agreement valid in equity or law. Now for the purpose of defending himself against a charge as a trespasser, and a suit to account for the profits in such a case, the evidence of a parol agreement would seem to be admissible for his protection; and, if admissible for such a purpose, there seems no reason why it should not be admissible throughout. * * * In like manner the mere possession of the land contracted for will not be deemed a part performance, if it be obtained wrongfully by the vendee, or if it be wholly independent of the contract. * * * But if the possession be delivered and obtained solely under the contract, or if in case of a tenancy the nature of the holding be different from the original tenancy, as by the payment of a higher rent, or by other unequivocal circumstances referable solely and exclusively to the contract, there the possession may take the case out of the statute."

See, too, Beardsley v. Duntley, 69 N. Y. 577; Browne on Statute of Frauds, § 467.

The rule is well settled that improvements made by the lessee of a kind natural to the existence of the contract for a lease, made on the faith of it and subsequent to it, may establish partial performance of the contract. Story's Equity Jurisprudence, supra, p. 80; Pomeroy, supra, § 126; Browne on Statute of Frauds, p. 590; Mundy v. Jolliffe, 5 Myl. & Cr. 167; Wendell v. Stone, 39 Hun, 382; Sutherland v. Briggs, 1 Hare, 26; Gibbs v. J. M. Horton Ice Cream Co., 61 App. Div. 621, 71 N. Y. Supp. 193. The testimony as to improvements in this case is open to the criticism that it nowhere clearly appears that they were made pursuant to any agreement for the lease, or that the defendants consented to them or had knowledge of them, save, perhaps, the platform. Generally speaking, no presumption of the owner's consent or knowledge arises from the mere fact that the improvements were made. Pomeroy, supra, § 126. In this case, in the absence of any evidence of the defendants' nonconsent or ignorance, possibly the character and condition of the building, the nature of the improvements, or of part of them, and the general knowledge of the defendants, who appear to have been in close touch with the premises, may be sufficient to raise a presumption of their consent or knowledge of the improvements. But, in any event, I think that there was sufficient evidence, aside from the matter of improvements, to justify the decree. As no sound reason appears why we should disturb the discretion of the equity court, I vote that the judgment be affirmed, with costs. Dunckel v. Dunckel, 141 N. Y. 428, 434, 36 N. E. 405.